Argued and submitted July 13, 1983, affirmed in part,
reversed in part, and remanded July 25, 1984

HORNBUCKLE,
*Appellant,*

*v.*

HARRIS et al,
*Respondents.*

BURNS,
*Appellant,*

*v.*

HARRIS et al,
*Respondents.*

(A8107-04619 and A8108-05315; CA A25879)

686 P2d 418

Louis Savage, Legal Aid Service, Portland, argued the cause for appellants. With him on the briefs was Michael H. Marcus, Legal Aid Service, Portland.

James N. Westwood, Portland, argued the cause for respondents. With him on the brief were Bruce A. Rubin, and Miller, Nash, Yerke, Wiener & Hager, Portland.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

WARDEN, J.

## WARDEN, J.

In these appeals plaintiffs seek reversal of judgments of dismissal, entered after the trial court granted defendants' ORCP 21A motions to dismiss and plaintiffs failed to replead. The cases were consolidated in the trial court. We reverse in part and remand.

The primary question we must answer is: Did plaintiffs allege facts sufficient to state a claim for relief? We are guided by ORCP 12A, which states that "[a]ll pleadings shall be liberally construed with a view of substantial justice between the parties." In construing these complaints, "we must assume the truth of all well-pleaded facts and give the plaintiff[s] the benefit of the inferences that can properly and reasonably be drawn from those facts." *Davidson v. Wyatt,* 289 Or 47, 64, 609 P2d 1298 (1980); *McWhorter v. First Interstate Bank,* 67 Or App 435, 437, 678 P2d 766, *rev den* 297 Or 272 (1984).

We recite only the facts in plaintiff Hornbuckle's case, because there are few material differences in the facts of the two cases.[1] In January, 1971, Hornbuckle purchased a home in Northeast Portland. In January, 1975, defendant Bonded, a collection agency, sued him for $675.81 in Multnomah County District Court. Defendant Harris operated a process serving business under the assumed name Bob's Messenger Service,[2] which served Hornbuckle by making substituted service on his wife. Bonded took a default judgment and filed it with the clerk of Multnomah County Circuit Court, who docketed it in the circuit court judgment docket.[3] Bonded did nothing to enforce its judgment until March, 1979, when it caused a writ of execution to issue against Hornbuckle's home. As required by *former* ORS 23.450(2) (*amended by* Or Laws 1979, ch 761, § 1; Or Laws 1981, ch 840,

---

[1] Harris and Brady are parties in both cases, and Bonded Credit Company (Bonded) is a party only in Hornbuckle's case. Capitol Credit and Collection Service, Inc. (Capitol) and Hawthorne Land Co. (Hawthorne) are parties only in Burns' case. These differences do not affect our decision.

[2] The business was later incorporated as Bob's Messenger Service, Inc.

[3] ORS 46.274 allows the filing and docketing of a district court judgment in the circuit court. Once a district court judgment is so docketed, it becomes a lien against the judgment debtor's real property as if it were a circuit court judgment. ORS 46.276(1).

§ 9; and Or Laws 1981, ch 903, § 9a), the sheriff published a notice of sale and mailed a copy to Hornbuckle.

At the sheriff's sale on April 18, 1979, Bonded purchased Hornbuckle's home by bidding its judgment and costs, something less than $1,000. At that time Hornbuckle's equity in the home was approximately $22,500. He received no post-sale notice that his home was sold,[4] nor was he informed of his right to redeem the property under *former* ORS 23.520 to 23.600. At that time, no statute required that a judgment debtor be notifed of his redemption rights.[5] Bonded did nothing for more than one year, until Hornbuckle's redemption rights had expired. Then on June 18, 1980, Bonded assigned its interest to Harris, and in April, 1981, defendant Brady acquired Harris' interest. During that entire time, Hornbuckle continued to live in the home, made mortgage payments[6] and paid real property taxes, even though Bonded, as purchaser at the judicial sale, was entitled to immediate possession of the property from the day of the sale. ORS 23.590.

Each complaint alleges six identical claims for relief. Specifically the complaints allege that defendants have a "pattern and practice"[7] of obtaining default judgments on small debts, executing on those judgments and then purchasing the homes of the judgment debtors at judicial sales, thereby unjustly enriching themselves by obtaining the excess

---

[4] ORS 23.530(1) allows a judgment debtor to redeem real property sold by judicial sale. ORS 23.560(1) requires the money judgment debtor to redeem the real property "within one year after the date of sale." Even though plaintiffs' homes qualified for homestead exemptions under *former* ORS 23.240(1), plaintiffs lost those exemptions because they failed to file homestead exemption claims. *See former* ORS 23.270 and 23.450(3). *Former* ORS ch 23 did not require anyone to give a judgment debtor notice that real property had been sold.

[5] A judgment debtor's home cannot now be sold to satisfy a judgment of less than $3,000, ORS 23.240(5), nor can a home be sold without a court order authorizing the sale. ORS 23.445(2). Once a home is sold, notice of the sale and of the right to redeem must be posted on the front door of the home and mailed to the owner. ORS 23.515, Or Laws 1981, chs 840 and 903. The new provisions are prospective only.

[6] Equity in the property increased by $7,500 between the date of the judicial sale and the filing of the complaint in this case.

[7] We note that defendants Harris or Hawthorne Land Co. have been before this court at other times involving similar practices. *See Household Finance v. Bacon,* 58 Or App 267, 648 P2d 421, *rev den* 293 Or 653 (1982); *First Federal v. Gruber,* 45 Or App 747, 609 P2d 419, *reversed* 290 Or 53, 618 P2d 1265 (1980); and *Salahub v. Montgomery Ward,* 41 Or App 775, 599 P2d 1210, *rev den* 288 Or 249 (1979).

equity in the real property. They also allege that defendants' "pattern and practice" is to exploit plaintiffs' ignorance of the consequences of judicial sales and their ignorance of the statutory right to redeem by failing to notify plaintiffs of their rights, thereby inducing plaintiffs to continue paying on their mortgages, to the further unjust enrichment of defendants. Additionally, they allege that, but for defendants' failure to advise plaintiffs of their right of redemption, plaintiffs would have redeemed their homes. We construe the complaints as alleging four claims based on an equitable right of a judgment debtor to redeem and two claims based on constitutional violations under 42 USC § 1983. As alternative remedies, plaintiffs request either an additional year to redeem, imposition of a constructive trust on the homes or money damages.

■     Oregon has long recognized the rule that the trial court has equitable power to set aside a sheriff's deed and allow a judgment debtor to redeem property when the price paid by the purchaser is so grossly inadequate as to shock the court's conscience. *Thompson v. Thompson,* 233 Or 262, 378 P2d 281 (1963); *Ahlstrom v. Lyon,* 169 Or 629, 131 P2d 219 (1942); *Shepperd v. Holmes,* 89 Or 626, 174 P 530 (1918). In *Shepperd,* the court affirmed the trial court's order allowing the plaintiff to redeem his property after the statutory redemption period had expired. The defendant had obtained a default judgment against the plaintiffs for $178. The sheriff sold real property of one of the plaintiffs to the defendant for the amount of the judgment plus costs, even though the fair market value of the property was $4,000. In affirming the trial court, the court relied on *Graffam v. Burgess,* 117 US 180, 6 S Ct 686, 29 L Ed 839 (1886).

In *Graffam,* the plaintiff brought a bill in equity to compel the defendant to return to her lands and premises held by the defendant. Earlier, the defendant had sued the plaintiff when she had refused to pay $23 for masonry work done on her summer home, which was worth more than $10,000. He recovered judgment for $28.95 and costs. After judgment was entered, the sheriff sold the property to him for $73.10. The plaintiff, unaware of the sale, did nothing until after the statutory right to redeem had expired and the defendant had taken possession of the property. The trial court granted the plaintiff's bill and allowed her to redeem her property, and the defendant appealed.

The defendant argued that he had merely followed the law. Of that argument the court stated:

"It is insisted that the proceedings were all conducted according to the forms of law. Very likely. Some of the most atrocious frauds are committed in that way. Indeed, the greater the fraud intended, the more particular the parties to it often are to proceed according to the strictest forms of law." 117 US at 186.

It noted that the defendant took advantage of the plaintiff's ignorance of the sale, gave no notice of the sale nor of his intent to seize the property once the redemption period had expired but, instead, allowed the plaintiff to spend money improving the property. The court concluded that it was the defendant's design to obtain the property for a nominal consideration and, further, that he had pursued a course of conduct calculated "to lull [the plaintiff] into security, and thus to prevent her from redeeming the property * * *." 117 US at 190. In affirming the late redemption, the court adopted the following rule:

"* * * [I]f the inadequacy of price is so gross as to shock the conscience, or if, in addition to gross inadequacy, the purchaser has been guilty of any unfairness, or has taken any undue advantage, or if the owner of the property, or party interested in it, has been for any other reason, misled or surprised, then the sale will be regarded as fraudulent and void, or the party injured will be permitted to redeem the property sold. Great inadequacy requires only slight circumstances of unfairness in the conduct of the party benefited by the sale to raise the presumption of fraud." 117 US at 192.[8]

■ We recognize that the equitable right to redeem a mortgage "only exists until the interest is foreclosed, while the statutory redemption only begins after the interest is foreclosed." *Land Associates v. Becker,* 294 Or 308, 313, 656 P2d 927 (1982). However, that rule has been applied to *mortgage* foreclosures only. *See Stamate v. Peterson,* 250 Or 532, 533,

---

[8] Other states also allow judgment debtors to redeem their property after the statutory redemption period has expired. *See Smith v. Kessler,* 43 Cal App 3d 26, 117 Cal Rptr 470 (1974) (one-year statutory time limit to redeem will not bar later redemption where equitable considerations require redemption); *In re Spears' Estate,* 359 Mich 90, 101 NW2d 332 (1960) (even though judgment creditor has complied with law and statutory period has expired, the court will allow late redemption where the facts disclose unfairness); and Annot., 5 ALR4th 794 (1981).

444 P2d 30 (1968). The rule is grounded in the nature of the contract obligation and its relation to the property. By giving a mortgage, the mortgagor expressly grants an interest in the mortgaged property to the mortgagee. The mortgagor knows, because the mortgage specifically provides, that failure to pay according to the terms of the mortgage can cause loss of the property securing the debt. We see no reason to extend the rule to apply to the foreclosure of these money judgments. Plaintiffs had not pledged their homes as security for payment of the debts. In fact, the judgments could not have been enforced by execution against their homes, if they had remained judgments of the district court.

Defendants urge that plaintiffs' complaints fail to state a claim, because plaintiffs have not alleged a violation of any duty owed them by defendants, citing *Scoggins v. State Construction,* 259 Or 371, 485 P2d 391 (1971). In *Scoggins,* the court relied on the Restatement of Restitution (1937) when it stated that an unjust enrichment claim must also allege an underlying ground, such as mistake, coercion, undue influence or fraud. 259 Or at 376. We have defined mistake as a "state of mind which is not in accord with the facts." *Ellison v. Watson,* 53 Or App 923, 927, 633 P2d 840, *rev den* 292 Or 108 (1981). The Restatement of Restitution § 6 adopts the same definition. *Comment b* to § 6 explains:

> "* * * A mistake may be induced solely by the inadvertance or lack of intelligence of the person making it, by the conduct of the party benefiting by it, or by the conduct of some other person; it may be induced by the innocent or fraudulent misrepresentation of the beneficiary or of some third person."

*Comment c* indicates that for relief to be granted the mistake must lead to conduct that has legal consequences.

Assuming the truth of all well pleaded facts and giving plaintiffs the benefit of all reasonably drawn inferences from those facts, they have stated claims for relief based on a theory of unjust enrichment on the underlying ground of mistake, induced by inadvertance or lack of intelligence. Inadvertance may be inferred from the allegations of the dates the cases were filed in the district court and the dates of the circuit court judicial sales and the time that elapsed between service of summons on plaintiffs and the expiration of their rights of redemption, nearly two years in Burns' case and more

than five years in Hornbuckle's. It may be inferred, too, from the facts that defendants were summoned to appear in one court and the notice of sale issued from a different court. Also, Hornbuckle's complaint alleges that he "has a sixth grade education level." To infer from that allegation that his mistake in failing to redeem his property was induced by a lack of intelligence is not unreasonable. The complaints also allege that it was defendant's pattern and practice to obtain judgment debtors' homes for a fraction of their value and then wait until the time to redeem had expired. That is a sufficient allegation that plaintiffs' mistake was induced by the conduct of the defendants.

We hold that plaintiffs have alleged facts sufficient to constitute claims for relief. Although the complaints leave much to be desired, defendants were sufficiently advised that plaintiffs sought an equitable right to redeem their homes and that this right was asserted on the basis of unjust enrichment. We are not called on to decide whether plaintiffs can produce sufficient evidence to prevail but only to decide whether the pleadings are adequate.

■       Plaintiffs also contend that defendants' failure to advise them of their redemption rights violated their Fourteenth Amendment rights to due process and equal protection of the law. They rely on 42 USC § 1983, which provides, in part:

> "Every person who, under color of any statute, * * * of any State * * * subjects, or causes to be subjected, any citizen of the United States * * * to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

To prevail on a § 1983 claim plaintiffs must first show that their right to redeem is a constitutionally protected property interest and that defendants deprived them of that interest while acting under color of state law. *Flagg Brothers, Inc. v. Brooks,* 436 US 149, 155, 98 S Ct 1729, 56 L Ed 2d 185 (1978). Although from this record it is evident that a federally protected property interest[9] is involved and assuming that

---

[9] At oral argument defendants conceded that there is a property interest in the right to redeem.

state action is involved, we nonetheless conclude that plaintiff's § 1983 claims fail to state a claim for relief, because we find no violation of due process.

At a minimum due process requires adequate notice and an opportunity to be heard. *Mullane v. Central Hanover Bank & Trust Co.*, 339 US 306, 313-16, 70 S Ct 652, 94 L Ed 865 (1950); *Rocky B. Fisheries v. No. Bend Fab.*, 66 Or App 625, 632, 676 P2d 319, *rev den* 297 Or 82 (1984). Plaintiffs were served with summonses in the collection agencies' actions against them but chose to ignore the summonses. They also received the statutorily required notice that their homes would be sold and that they might be entitled to claim homestead exemptions but again chose to ignore the notices. Receipt of those papers constituted adequate notice and provided opportunities to be heard. The notice that plaintiffs did not receive—post-sale notice of their right to redeem—was not statutorily required at that time. Based on the foregoing facts as established by the pleadings, there is no 1983 violation. *See Texaco, Inc. v. Short*, 454 US 516, 102 S Ct 781, 70 L Ed 2d 738 (1982); *Mullane v. Central Hanover Bank & Trust Co., supra.*[10]

We conclude that plaintiffs' complaints state claims for relief based on unjust enrichment but fail to state claims for violation of due process.

Affirmed in part; reversed in part; and remanded.

---

[10] *But see Mennonite Board of Missions v. Adams,* 462 US 791, 103 S Ct 2706, 77 L Ed 2d 180 (1983), holding that notice of sale of mortgaged property for nonpayment of taxes, given a mortgagee by publication and posting, fails to meet requirements of the Due Process Clause of the Fourteenth Amendment.