Argued and submitted February 26, affirmed December 17, 1997

FEDERAL HOME LOAN MORTGAGE CORPORATION,
a corporation,
*Respondent,*

*v.*

Janet Lynn BAUER,
aka Janet L. Freeman, aka Janet Lynn Freeman-Bauer,
Larry R. Bauer, and NDC, LTD,
a corporation,
*Appellants,*

RIVIERA FINANCE EAST BAY, INC.,
a California corporation, Trans National Leasing, Inc.,
a Washington corporation, and United States of America,
Internal Revenue Service,
*Defendants,*

*and*

SECURITY PACIFIC FINANCIAL SERVICES, INC.,
a Delaware corporation,
*Respondent.*

(CCV95-06104; CA A93340)

950 P2d 399

Sid Brockley, Judge (summary judgment)

Shay S. Scott argued the cause for appellants. With him on the briefs was Hagland & Kirtley.

Christine A. Kosydar argued the cause for respondent Security Pacific Financial Services, Inc. With her on the brief were Charles F. Adams and Stoel Rives LLP.

No appearance for respondent Federal Home Loan Mortgage Corporation.

Before Deits, Chief Judge, and Warren and De Muniz, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Appellants Janet Bauer, Larry Bauer and NDC, Ltd. (NDC) appeal from an order terminating a decree of foreclosure after the property was equitably redeemed under ORS 88.100. We review *de novo*, ORS 19.125(3), and affirm.

Janet Bauer owned real property in Clackamas County. Plaintiff Federal Home Loan Mortgage Corporation (FHLM) held a first mortgage on the property, and defendant Security Pacific held a second lien by virtue of a trust deed. The other defendants held interests in the property junior to those of FHLM and Security Pacific. After Janet Bauer defaulted, FHLM filed this foreclosure action in June 1995. Security Pacific was served but did not appear, and the court entered an order of default against Security Pacific on August 7. On December 21, the court granted FHLM's motion for summary judgment and issued a decree of foreclosure that stated, *inter alia*, that defendants, including Security Pacific, were "forever foreclosed of all interest, lien or claim in the real property * * * excepting only any statutory right of redemption which the defendants may have[.]"

In April 1996, after the decree was entered but before the foreclosure sale, FHLM assigned its rights in the foreclosure judgment to Security Pacific, which filed a notice of assignment with the court.[1] Security Pacific then tendered $68,952.85 to the court, the "full sum due on plaintiff's judgment" pursuant to ORS 88.100. On April 23, Janet Bauer and Larry Bauer assigned their interest in the property to NDC.

---

[1] During the foreclosure proceedings, Security Pacific instituted a nonjudicial foreclosure of its trust deed. It explains:

"In this case, Security Pacific did not want to set up its interest [in the foreclosure], because it would then be bound to proceed with a judicial foreclosure and suffer the attendant redemption rights. Because Security Pacific cannot recover a deficiency judgment in either a judicial or a nonjudicial foreclosure of a residence (ORS 86.770(2)), it chose the most efficient means of foreclosure by power of sale (nonjudicial foreclosure) under Oregon statutes in chapter 87. Security Pacific had the right to foreclose its lien nonjudicially. If it had appeared in FHLM's action, it would be precluded from exercising this right, because under ORS 86.735(4) it may not simultaneously pursue a judicial and nonjudicial foreclosure."

Security Pacific canceled the sale after it entered into the assignment of judgment with FHLM.

On May 29, the court entered an order terminating the decree of foreclosure. It is that order that appellants appeal, naming as respondents FHLM and Security Pacific.[2]

NDC first assigns error to the court's allowing Security Pacific to equitably redeem under ORS 88.100. The statute, enacted in 1862,[3] provides:

> "If, before a decree is given, the amount then due with the costs of suit is brought into court and paid to the clerk, the suit shall be dismissed. If the same is done after decree and before sale, the effect of the decree as to the amount then due and paid shall be terminated, and the execution, if any has issued, shall be recalled by the clerk. When an installment not due is adjudged to be paid, the court shall determine and specify in the decree what sum shall be received in satisfaction thereof, which sum may be equal to such installment, or otherwise, according to the present value thereof."

NDC argues that Security Pacific could not redeem under ORS 88.100, because a party must have an interest in the property in order to redeem and, when Security Pacific defaulted in the foreclosure proceeding, it was forever barred from any interest.[4] Security Pacific contends that its interest in the property was not extinguished, because a default order is not an adjudication on the merits but, even if it is so construed, the decree of foreclosure only determined the priority of FHLM's lien, because that is what FHLM sought in its pleadings. *See Rajneesh Foundation v. McGreer*, 303 Or 139, 143, 734 P2d 871 (1987) (default judgment establishes all material facts alleged in the complaint). NDC responds that

---

[2] The effect of the order was to revive the junior liens, thereby preventing NDC from purchasing the property and obtaining clear title for only the amount of the senior debt and minor costs.

[3] General Laws of Oregon, ch 5, § 418, p 253 (Civ Code) (Deady 1862).

[4] NDC also argues that no Oregon court has held that a senior mortgagee can equitably redeem its own mortgage, "undoubtedly because no rational senior mortgagee would ever try," and, therefore, when Security Pacific received an assignment of FHLM's judgment, it did not acquire an equitable right of redemption. Security Pacific answers that it held "two separate and distinct, unmerged interests in the property": the assignment of FHLM's judgment and the separate right to redeem under ORS 88.100. It argues that it did not intend to and did not "redeem" the senior mortgage as a result of the assignment of the judgment. Because we conclude that Security Pacific could redeem under ORS 88.100, we do not address NDC's alternative argument.

the foreclosure decree did "forever bar and foreclose" Security Pacific's interest.

■ The text of ORS 88.100 does not preclude a defaulting junior lienor from redeeming under the statute. NDC argues, however, that the Supreme Court has "long recognized" that a party must have an interest in the property in order to equitably redeem. *Portland Mtg. Co. v. Creditors Prot. Ass'n*, 199 Or 432, 441, 262 P2d 918 (1953) (equity of redemption is a valuable right that exists in every person who has an interest in, or legal or equitable lien upon, the mortgaged premises). Therefore, NDC argues, ORS 88.100 includes the requirement of a valid property interest as a prerequisite to equitable redemption.

NDC is correct that, when the Supreme Court interprets a statute, that interpretation becomes part of the statute as if written into it at the time of its enactment. *Walther v. SAIF*, 312 Or 147, 149, 817 P2d 292 (1991). However, in *Portland Mtg. Co.*, the court held that a junior lienor omitted from a foreclosure action has an equitable right to redeem, but the court did not interpret ORS 88.100, and the issue of whether a defaulting junior lienor could redeem under the statute was not before the court. NDC argues that, under Oregon law involving real property and defaulting junior lienors,

> "a default judgment in a foreclosure proceeding has a conclusive effect—a defaulting party is *forever barred* from asserting an interest in the land that is the subject of the action." (Emphasis NDC's.)

As authority for that proposition, NDC cites *Call v. Jeremiah*, 246 Or 568, 425 P2d 502 (1967); *Lutz v. Blackwell et ux.*, 128 Or 39, 273 P 705 (1929); *Giesy v. Aurora State Bank et al.*, 122 Or 1, 255 P 467, 256 P 763 (1927); *Bickel v. Wessinger*, 58 Or 98, 113 P 34 (1911); *Wright v. Conservative Invest. Co.*, 49 Or 177, 89 P 387 (1907); and *Williams v. Wilson*, 42 Or 299, 70 P 1031 (1902).

However, NDC's authorities do not advance its position. From those cases, NDC has pointed to statements to the effect that if one is made a party defendant in an action in which the party's lien is attacked, the lienor must set up the

lien or otherwise it will be in default and can get nothing. *See, e.g., Williams,* 42 Or at 307. NDC has not, however, discussed those statements in their factual contexts, and none addressed the issue of the right of a defaulting junior lienor to redeem before the sale on foreclosure.[5] For example, in *Call,* the Calls had a second mortgage on property in a foreclosure proceeding. They were joined as parties but defaulted. The property was sold and redeemed. A year-and-a-half later, the Calls sought to foreclose their second mortgage. The court held that the redemption of the property after the sale did not revive the second mortgage of the Calls. To perpetuate their lien, the Calls were required to assert the lien in the foreclosure proceeding. 246 Or at 573. That is not the situation here where Security Pacific redeemed before the sale.

ORS 88.100 codifies the common-law doctrine of equitable redemption, and, in *Land Associates v. Becker,* 294 Or 308, 312-13, 656 P2d 927 (1982), the Supreme Court discussed the doctrine in a brief review of the history of mortgages. The court explained that equitable redemption developed during the period when title to the land was held to pass to a lender at the time a person borrowed money on the land. Equitable redemption was a means to avoid the harsh result of the borrower losing all rights to the land on the failure to pay amounts due on Law Day. In turn, foreclosure developed to avoid the abuses of equitable redemption under which some borrowers were allowed to reclaim land years after payment was due. Foreclosure was designed to end the period of equitable redemption so that the new owner could be certain

---

[5] Almost all of the cited cases discuss issues of equitable redemption after a foreclosure sale: *Bickel v. Wessinger,* 58 Or 98, 113 P 34 (1911) (in suit brought after sale of foreclosed property, held that a second mortgage was extinguished when mortgage holder had failed to appear in the first foreclosure proceeding); *Lutz v. Blackwell et ux.,* 128 Or 39, 273 P 705 (1929) (after foreclosure and sale of real property, payee of note secured by second mortgage on the property who did not appear in foreclosure proceeding held to have waived security but could still bring action on note); *Wright v. Conservative Invest. Co.,* 49 Or 177, 89 P 387 (1907) (in suit by trustee to foreclose mortgage in her name for benefit of others, allegation of complaint that defendants have claim is sufficient to require each defendant to appear and disclose interest or be forever barred from asserting it); *Williams v. Wilson,* 42 Or 299, 70 P 1031 (1902) (in suit after sale on foreclosure, held that junior lienor who had appeared in foreclosure could not subsequently execute on judgment lien); *Giesy v. Aurora State Bank et al.,* 122 Or 1, 255 P 467, 256 P 763 (1927) (senior lienor not estopped from foreclosure proceeding by decree in foreclosure suit brought by junior mortgagee).

that the title was secure and the previous owner could not redeem the land.

In the light of that historical development of equitable redemption, we agree with Security Pacific that NDC's argument fails to distinguish between the foreclosure of a lien interest and the right to redeem. As the Supreme Court explained in *Call*:

"Plaintiffs misconceive the purpose of foreclosure proceedings and the effect of the foreclosure decree. The effect of the foreclosure decree is not simply to extinguish the interest of the mortgagee bringing the suit—it is designed to extinguish *all* interests which are subordinate to the foreclosing mortgagee's interest. This result is clearly pronounced in the decree itself. If a second mortgagee or other junior encumbrancer wishes to assert that his lien is prior to that of the plaintiff, or if he wants to obtain a deficiency judgment in the foreclosure proceedings rather than through a separate action on the debt, he is free to do so. But if he elects not to raise these or other questions, the decree will extinguish his mortgage lien.

"* * * * *

"[The] effect of the decree is explained in the various treatises on mortgages. Thus, in 2 Wiltsie, Mortgage Foreclosure, § 835 at pp. 1355-56 (5th ed 1939), the author says: 'Where a subsequent mortgagee or lienor is made a party to the action or proceeding for the foreclosure of a prior mortgage, the judgment or decree therein destroys his lien, and upon the expiration of the time for redemption the purchaser is entitled to the property free from the lien. The subsequent mortgagee or lienor is remitted to the fund realized in the foreclosure proceedings above that required to satisfy all proper prior charges.' Our own cases express the same idea.

"Wiltsie's statement that 'upon the expiration of the time for redemption the purchaser is entitled to the property free from his lien' is intended to explain that the purchaser takes the land at the end of the redemption period and that when he does the land is free from the lien. Wiltsie's preceding statement that the decree 'destroys the lien' is unqualified, which means that the lien is destroyed not only as to the purchaser but as to all others unless the

destroyed lien is brought back to life, which is another matter involving the policy behind the redemption statutes and the desirability of *reviving* liens which are destroyed by a foreclosure decree." 246 Or at 572-74 (footnotes omitted; emphasis in original).

Accordingly, the foreclosure sale terminates the equitable right to redeem, and the time for statutory redemption begins. *Land Associates*, 294 Or at 313 ("It is important to distinguish the two types of redemption—equitable redemption only exists until the interest is foreclosed, while statutory redemption only begins after the interest is foreclosed."); *Hornbuckle v. Harris*, 69 Or App 272, 277, 686 P2d 418 (1984). Under ORS 88.100, equitable redemption before sale is not dependent on a junior lienor's appearance in the foreclosure proceeding, and we are not persuaded by NDC that case law precludes Security Pacific from redeeming under ORS 88.100 here. The trial court did not err.

NDC next assigns error to the trial court's entering an order that terminated the foreclosure decree in its entirety, "revived" all liens, and restored the parties to their "original positions." ORS 88.100 provides that, if the amount due is paid to the clerk of the court before a decree, "the suit shall be dismissed," and, if payment is made "after decree and before sale, the effect of the decree as to the amount then due and paid shall be terminated, and the execution, if any has issued, shall be recalled by the clerk." NDC argues that, under the plain language of ORS 88.100, the only effect of payment in the circumstances here is to halt the sale and to satisfy the senior mortgagee's money judgment. It contends that the statute does not state that, upon redemption, the trial court's determinations of the interests and priorities in the property shall be set aside.

Security Pacific argues that the language of ORS 88.100 does not support NDC's argument. Rather, Security Pacific contends, the statute provides for the situation when the debt is payable in installments. Security Pacific contends that ORS 88.100 provides that, if a partial payment is made, the decree is terminated only to the extent of the amount paid. Security Pacific argues that that meaning is clear when

ORS 88.100 is considered in the context of the preceding statute, ORS 88.090. Considering ORS 88.100 with related statutes, we agree with Security Pacific. *See Owens v. MVD*, 319 Or 259, 265, 875 P2d 463 (1994) (in first level of analysis in statutory construction, court considers the context of the statutory provision at issue, including other provisions of the same and related statutes).

■ "A decree of foreclosure shall order the mortgaged property sold." ORS 88.080. Under ORS 88.090, that sale may be held even if the debt is payable in installments:

> "When a suit is commenced to foreclose a lien securing a debt payable in installments, either of interest or principal, and any of such installments is not then due, the court shall decree a foreclosure of the lien, and may also decree a sale of the property for the satisfaction of the whole debt, or so much thereof as may be necessary to satisfy the installment then due, with costs of suit. In the latter case, the decree of foreclosure as to the remainder of the property may be enforced by an order of sale, in whole or in part, whenever default occurs in the payment of the installments not then due."

Accordingly, under the scheme provided for by ORS 88.090 and ORS 88.100, a sale may be ordered if an installment is due, but the property may be redeemed before sale by payment of the installment. In that case, no sale may be held, but a sale under the decree can later be ordered if a later installment is not paid.

■ Here, it is undisputed that the amount of the senior mortgage has been paid in full. The senior mortgagor has received "the amount then due" to which it was entitled. Under ORS 88.100, the effect of the decree is terminated. The trial court did not err in entering the order terminating the decree of foreclosure. *See Williams*, 42 Or at 305 (redemption is from the sale and not from the mortgage); *Portland Mtg. Co.*, 199 Or at 442 (when junior lien claimant equitably redeems, effect is to substitute the junior for the senior lienholder; the aggregate of the liens will be unchanged, but the persons holding the liens will be different); *Kaston v. Storey*, 47 Or 150, 155, 80 P 217 (1905) (redemption put end to further proceedings to enforce decree, defeated inchoate right or

title of purchaser and restored property to same condition as if no sale had been attempted).

Affirmed.