534

Argued and submitted December 13, 2001, reversed and remanded
February 13, 2002

John R. DUREE, Jr.,
and Mark M. Kemp
and Wild Desert Ranch, LLC.,
*Plaintiffs,*

*v.*

Henry BLAIR,
*Appellant,*

*and*

FREEDOM CATTLE RANCH, L.L.C.,
an Oregon Limited Liability Corporation,
*Respondent.*

95-07-10956 L; A110605

40 P3d 540

Brian L. Gingerich argued the cause for appellant. With him on the briefs was Merrill O'Sullivan, LLP.

Charles R. Markley argued the cause for respondent. With him on the brief were Gary L. Blacklidge and Greene & Markley, P.C.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.

BREWER, J.

**BREWER, J.**

Defendant Henry Blair appeals from two trial court orders, the first rejecting his attempt to redeem real property that had been sold on execution of a judgment lien and the second confirming the sale of the property to defendant Freedom Cattle Ranch, LLC (Freedom). Because the relevant facts are undisputed, we review for errors of law, *Franklin v. Spencer*, 309 Or 476, 789 P2d 643 (1990), and reverse.

Blair owned several parcels of real property in Harney County. In 1995, a money judgment was entered against him in a Harney County Circuit Court action (Judgment No. 1). Judgment No. 1 was partially satisfied by a levy of execution on some of the real property owned by Blair, reducing the amount of the judgment to $18,000. In 1996, a second money judgment was entered against Blair for $7,320.70 in a Multnomah County District Court action (Judgment No. 2). Both judgments were assigned to Wild Desert Ranch, LLC (Wild Desert), in 1997 and 1999, respectively.

In June 1999, Wild Desert recorded a lien record abstract of Judgment No. 2 in the official records of Harney County. In September, Wild Desert assigned to Freedom its rights under Judgment No. 2. In October, Freedom, as a junior lien creditor under Judgment No. 2, redeemed the property sold on the levy of execution on Judgment No. 1, for $18,281.81. That sum represented the amount paid for the judgment by Wild Desert plus interest at 10 percent per annum.

On February 14, 2000, less than 180 days after the execution sale, Blair attempted to redeem the property from Freedom. Blair tendered to the clerk of the court $18,817.20, representing the redemption price paid by Freedom plus interest at the rate of nine percent per annum. Freedom objected to the attempted redemption, arguing that Blair had no remaining redemption rights and, if he did, that he also was required to satisfy Judgment No. 2 in order to redeem the property. The trial court agreed that Blair was required to satisfy Judgment No. 2 and rejected Blair's redemption

tender. The court then issued an order confirming the sheriff's sale of the property to Freedom. See ORS 23.600.[1]

On appeal, Blair contends that the trial court applied the wrong statute in determining the amount necessary for him to redeem the property. Blair argues that the trial court mistakenly applied ORS 23.550,[2] which provides for redemption by lien creditors, rather than ORS 23.560,[3]

---

[1] ORS 23.600 provides:

"If redemption is not made as prescribed in ORS 23.520 to 23.590, or when redemption is made and a period of 60 days has elapsed without any other redemption, the purchaser or redemptioner shall be entitled to a conveyance from the sheriff. If the judgment debtor redeems at any time before the time for redemption expires, the effect of the sale shall terminate and the judgment debtor shall be restored to the estate of the judgment debtor. If, at any time prior to the expiration of the statutory period of redemption, it is made to appear to the satisfaction of the court, that the purchaser or redemptioner has acquired the rights of all persons entitled to redeem, the court may direct the sheriff to execute a deed of conveyance to such purchaser or redemptioner forthwith, and upon the execution thereof the title of such purchaser or redemptioner shall become absolute."

[2] ORS 23.550 provides:

"If the property is redeemed under ORS 23.540 [providing for redemption by a lien creditor], any other lien creditor may, within 60 days from the last redemption, again redeem it, on paying the sum paid on the last redemption, with interest at the rate of 10 percent per annum thereon from the date of the last preceding redemption in addition, together with any taxes which the last redemptioner may have paid thereon, and, unless the lien of the lien creditor is prior to that of such redemptioner, the amount of such lien, with interest. The property may be again, and as often as any lien creditor or redemptioner is disposed, redeemed from the last previous redemptioner, within 60 days from the date of the last redemption, on paying the sum paid on the last previous redemption, with interest at the rate of 10 percent per annum thereon, from the date of such previous redemption, together with the amount of any taxes paid thereon by such last redemptioner, and the amount of any liens held by such last redemptioner prior to the redemptioner's own, with interest."

[3] ORS 23.560 provides, in part:

"(1) The mortgagor or judgment debtor whose right and title were sold * * * may, at any time within 180 days after the date of sale, redeem the property * * *.

"(2) Redemption shall be made by paying the amount of the purchase money, with interest thereon at the rate of nine percent per annum from the date of sale, together with the amount of any taxes the purchaser may have been required to pay thereon, and any sums necessarily expended by the purchaser to prevent waste, and also all sums that the purchaser may have been required to pay on prior liens, with interest upon every such payment made by the purchaser at the rate of nine percent per annum from the date of payment thereof * * *.

"(3) The mortgagor or judgment debtor * * * shall be entitled to a setoff, against the amount necessary to be paid to redeem any property subject to redemption, for all rents, issues and profits accruing from the property sought

which governs redemption by judgment debtors. He argues that the amount to be tendered and the period in which a debtor must do so are set out specifically in ORS 23.560 and that the required tender does not include the satisfaction of junior liens such as Judgment No. 2. Freedom responds that (1) the governing statutes do not afford a judgment debtor the right to redeem from an execution sale property that previously had been redeemed by a lien creditor; (2) if they do, there is no unambiguous statutory provision for the amount that the redeeming debtor must tender; and (3) sound and equitable policy favors a requirement that the judgment debtor pay the amount paid by the lien creditor on redemption, plus interest *and*, in addition, satisfy the lien creditor's own judgment. Freedom contends that—*if* Blair was entitled to redeem—he was required to pay the $18,817.20 he

---

to be redeemed while the same was in possession of the purchaser, upon the mortgagor or judgment debtor giving to the purchaser or the purchaser's successors in interest at least 10 days' written notice to render an accounting for all rents, issues and profits accruing from the property sought to be redeemed. * * *

"(4) Within 10 days after the notice provided for in subsection (3) of this section is given, the purchaser or the purchaser's successors in interest shall file with the sheriff of the county wherein the property sought to be redeemed is situated a verified account of all rents, issues and profits accruing from, and of all sums for which the purchaser claims a lien upon the property sought to be redeemed while the same was in the possession of the purchaser or the purchaser's successors in interest. At any time within five days thereafter the judgment debtor or mortgagor shall file any objection which the judgment debtor or mortgagor may have to said account with the sheriff, who forthwith shall transmit all papers in the sheriff's possession touching upon said foreclosure, sale and redemption to the court having jurisdiction, or to the judge thereof. The sums, if any, due the mortgagor or judgment debtor, or claimed by the purchaser under the purchaser's lien, shall thereafter be determined by the court or the judge thereof at chambers in a summary manner at the time of redemption, and, upon such determination, the judge shall immediately return the files in the case, together with the judge's findings, to the sheriff of such county. Either party may appeal to the Court of Appeals from such determination and decision by the court. An appeal by the redemptioner shall not extend the time for redemption unless the redemptioner shall, in addition to the undertaking otherwise required by law upon appeal, and within the time allowed for filing an undertaking upon appeal, give an undertaking with one or more sureties, who shall justify in like manner as bail upon arrest, that the redemption will fully consummate the redemption and pay such sums as shall finally be determined to be the amounts required for the redemption.

"(5) As used in this section, 'purchaser' or 'purchaser or the purchaser's successors in interest' means the original purchaser or the original purchaser's assigns, or the purchaser's successors in interest or those holding after the purchaser or under the purchaser."

tendered, *plus* the $7,320.70 balance required to satisfy Judgment No. 2. For the reasons that follow, we conclude that Blair was entitled to redeem the property under ORS 23.560 without also satisfying Judgment No. 2.

■ We begin with a brief discussion of the statutory framework for redemption from a sheriff's sale following a levy of execution on a judgment or mortgage lien against real property. When real property is sold on execution, in most circumstances, the purchaser is entitled to possession of the property. *Franklin*, 309 Or at 482. The purchaser receives a certificate of sale, ORS 23.510, which the purchaser retains until all statutory redemption periods have expired. At that time, if no redemption has occurred, "the purchaser shall be entitled to a conveyance from the sheriff." ORS 23.600.

Parties in two positions have the right to redeem real property sold on execution. First, the judgment debtor or mortgagor may redeem the property at any time within 180 days of the execution sale by tendering to the sheriff the amount paid by the purchaser, plus nine percent interest from the date of sale, plus taxes and other costs incurred by the purchaser, including amounts that the purchaser may have been required to pay on prior liens. ORS 23.560(2). If a debtor or mortgagor exercises the right to redeem, "the effect of the execution sale" is terminated. ORS 23.600. Second, a lien creditor may redeem the property at any time within 60 days of the execution sale by tendering the amount paid by the purchaser, plus 10 percent interest, taxes, and other costs "that the judgment debtor might be required to pay for redemption." ORS 23.540. In addition, other lien creditors may redeem from the redemptioner within 60 days of the prior redemption by tendering to the sheriff the amounts paid by the prior redemptioner, plus 10 percent interest, and the aforementioned costs and taxes. ORS 23.550. A lien creditor that has redeemed property is termed a "redemptioner." ORS 23.530(2). However, the legislature also has used the term "redemptioner" more broadly. For example, ORS 23.560(4), which governs accounts for rents, issues, and profits accruing while the purchaser was in possession before redemption by a judgment debtor or mortgagor, also describes the latter parties as "redemptioners."

With that background, we turn to the specific arguments of the parties on appeal. Blair contends that ORS 23.560 affords judgment debtors a 180-day right of redemption and that the trial court erred in refusing to allow him to exercise that right. Freedom responds that, although ORS 23.560 permits a judgment debtor to redeem from a *purchaser*, no statute allows a judgment debtor to redeem from a *redemptioner*. Freedom argues that, under ORS 23.550, "[o]nly lien creditors can redeem from redemptioners." Freedom is mistaken.

■ Although ORS 23.550 governs the rights of lien creditors to redeem property from previous lien creditor redemptioners, it does not limit the redemption rights of judgment debtors or mortgagors. ORS 23.560 is the statute that governs a mortgagor's or judgment debtor's right to redeem real property, and it does so only in regard to time, price, and procedure—in no way restricting *from whom* the debtor can redeem. Although ORS 23.560(2) contemplates that a judgment debtor shall redeem from a *purchaser*, ORS 23.560(5) defines "purchaser," for purposes of ORS 23.560, to include persons "holding after the purchaser." Because a redeeming judgment lien creditor *holds after* the purchaser at an execution sale, the term "purchaser"—in context—encompasses such a creditor. Our conclusion is consistent with our decision in *State ex rel Veterans Affairs v. Montgomery*, 41 Or App 127, 130-31, 597 P2d 835 (1979), in which we held that ORS 23.560 entitled a judgment debtor's successor, on giving notice of intent to redeem, to an accounting from a lien creditor that had previously redeemed pursuant to ORS 23.530.

■ For at least three reasons, the reference in ORS 23.530(2) to judgment lien creditors as "redemptioners" does not compel a different conclusion. First, the fact that lien creditors are "termed" by statute as "redemptioners" does not mean that redeeming judgment debtors are not also redemptioners. As noted, redemption by judgment debtors is separately governed, both procedurally and substantively, by ORS 23.560, which affords judgment debtors an unrestricted right to redeem at *any time* within the statutory redemption period. *See First Federal v. Gruber*, 290 Or 53, 58, 618 P2d

1265 (1980).[4] Second, and confirming the first point, ORS 23.560(4) expressly refers to a redeeming judgment debtor or mortgagor as a "redemptioner." Third, although the right to redeem is strictly statutory and must be pursued in accordance with the applicable statutes, redemption statutes are remedial and are to be liberally construed. *Household Finance v. Bacon*, 58 Or App 267, 270, 648 P2d 421, *rev den* 293 Or 653 (1982). Freedom's view of the interaction of the relevant statutes would, through a tenuous construction, restrict a judgment debtor's otherwise unlimited right to redeem during the prescribed period. We therefore conclude that ORS 23.560 permits a judgment debtor, for 180 days after the date of sale, to redeem from any person holding after the purchaser, including a judgment lien creditor redemptioner.

■ We turn to the question of whether Blair was required to satisfy Judgment No. 2 in order to redeem the property. Contrary to Freedom's assertion, ORS 23.560(2) unambiguously specifies the categories of payments that a judgment debtor must make in order to redeem. The amount of any unsatisfied junior judgment lien is not enumerated in that list. The statute provides that "redemption shall be made by paying" (1) the amount of the purchase money, with interest at nine percent per annum from the date of sale; (2) any taxes the purchaser may have been required to pay; (3) any sums necessarily expended by the purchaser to prevent waste; and (4) all sums that the purchaser may have been required to pay on prior liens, plus interest at nine percent. Blair tendered in redemption $18,817.20, representing the amount paid by Freedom to redeem from Wild Desert, plus interest at nine percent per annum. Neither Wild Desert nor Freedom paid any property taxes or sums to prevent waste, and there were no liens prior to Judgment No. 1 at the time of the sale. Because Blair properly tendered all sums required by ORS 23.560(2), the trial court erred in rejecting that tender.

---

[4] ORS 23.600 confirms that a judgment debtor may redeem "at any time" during the 180-day redemption period. Because the "effect of the sale shall terminate" when a judgment debtor redeems as prescribed, any previous redemption by a judgment lien creditor from the sale likewise "terminates."

Freedom argues that our conclusion is erroneous for two additional reasons: (1) it will create the absurd and unfair result of extinguishing the *consensual* lien of a mortgagee who redeems from the execution of a prior judgment lien, when the judgment debtor redeems in turn from the mortgagee; and (2) it will require wasteful successive proceedings to execute on subordinate *nonconsensual* liens. Those arguments are unpersuasive.

Freedom's first argument is speculatively based on the Supreme Court's decision in *Call v. Jeremiah*, 246 Or 568, 425 P2d 502 (1967). In *Call*, a mortgage foreclosure action, the court held that the lien of defaulted junior mortgagees was not revived when the mortgagor redeemed after a foreclosure sale. *Id.* at 584-85. In other words, to perpetuate their lien, the junior mortgagees were required to assert the lien in the foreclosure proceeding. *Id.* at 573. *See Federal Home Loan Mortgage Corp. v. Bauer*, 151 Or App 591, 597, 950 P2d 399 (1997). A junior mortgagee who *redeems* from a judgment execution sale, and from whom the judgment debtor in turn redeems, has not failed to assert its lien in any relevant respect. We thus need venture no further to conclude that *Call* does not govern the hypothetical posed by Freedom.

Freedom's second argument fails for two reasons. First, this court may not reconstruct an unambiguous legislative enactment to subserve the court's view of sound public policy. *See State v. Vasquez-Rubio*, 323 Or 275, 283, 917 P2d 494 (1996) (rejecting absurd result maxim in the absence of statutory ambiguity). Second, our holding will not require wasteful and redundant litigation. To date, Freedom has never attempted to levy execution on Judgment No. 2. The lien of that judgment will be revived upon redemption by the judgment debtor. *Franklin*, 309 Or at 488; *see also* ORS 23.600 ("If the judgment debtor redeems[,] * * * the judgment debtor shall be *restored* to the estate of the judgment debtor.") (Emphasis added.) Nothing we have said prevents Freedom from levying execution on Judgment No. 2; we merely have held that Freedom may not compel Blair to satisfy that judgment in order to redeem the property from the execution of a different judgment. ORS 23.560—as we have

construed it—functions within its surrounding statutory context as the legislature intended.[5]

Reversed and remanded.

.

---

[5] Blair also assigns error to the trial court's determination that Freedom was entitled to redeem in the first instance. Blair contends that, because it did not first transcribe Judgment No. 2 to Multnomah County Circuit Court, Freedom failed to follow the requirements of *former* ORS 46.278 (1993) in recording Judgment No. 2 in Harney County, that Freedom's failure to do so rendered the judgment unenforceable in Harney County and that, therefore, Freedom was not a judgment lien creditor entitled to redeem under ORS 23.530. Blair concedes that the argument was not preserved for our consideration, but he contends that the error is apparent on the face of the record. We conclude that the error, if any, is not apparent, so we do not reach it. *See Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991).