Argued and submitted November 3, reversed and remanded December 30, 1982

# LAND ASSOCIATES, INC.,
*Plaintiff,*
*v.*
# BECKER ET AL,
*Defendants.*

# BAUTISTA,
*Petitioner on Review,*
*v.*
# LAND ASSOCIATES, INC. ET AL,
*Respondents on Review.*

(CA 22290, SC 28874)

656 P2d 927

Harold D. Gillis, Eugene, argued the cause and filed the briefs for petitioner on review.

William A. Turnbow, Eugene, argued the cause and filed the brief for respondents on review. With him on the brief was Hershner, Hunter, Miller, Moulton & Andrews, Eugene.

Before Lent, C. J., Linde, Tanzer, Campbell, Roberts and Carson, Justices.

## CAMPBELL, J.

Launa H. Bautista, the assignee of unjoined pendente lite junior lien creditors, attempted to redeem property after foreclosure. The trial court dismissed her complaint in intervention in which she named Land Associates, Inc. and its assignee E & B Investors, Inc. as defendants. The Court of Appeals affirmed on the basis that she had no statutory right to redeem. We reverse.

Land Associates, the seller of real property on a land sales contract, brought an action for judgment against its buyer on June 26, 1979, naming several others who had interests in the property as defendants. Land Associates initially requested a strict foreclosure, but in an amended complaint asked for a judicial sale. Land Associates joined those who held junior liens and judgments of record at the time it filed the complaint. After the complaint was filed, two trust deeds and a judgment against the buyer went on record. The trust deeds were recorded June 27, 1979, and July 2, 1979. The judgment was entered October 31, 1979. The people holding these three above-mentioned liens were not joined in the foreclosure action and did not intervene. On November 19, 1979, Becker, the purchaser on the contract, conveyed his interest in the property by deed to respondent E & B Investors. On March 5, 1980, the trial court entered a stipulated decree that gave Land Associates judgment for the balance of the purchase price, attorney fees and costs and directed the sale of the property on execution by the sheriff to satisfy the judgment. The decree provided for a possible deficiency and foreclosed all property interests or rights of all defendants, except for the statutory rights of redemption.

Land Associates bought the property at the sheriff's sale on April 17, 1980, and 27 days later, on May 14, 1980, obtained an ex parte order from the court directing the sheriff to issue a deed. The record in this court indicates that only the State of Oregon waived its rights to redeem. On this same day Land Associates assigned the certificate of sale to respondent E & B Investors and conveyed the property. The sheriff issued the deed the following day. The court confirmed the sale on May 15, 1980.

The three pendente lite lien creditors mentioned above then assigned their interests to appellant Bautista on June 13, 1980. On the same day, 57 days after the sale, Bautista served her notice of intent to redeem on Land Associates and its assignee E & B Investors. The sheriff refused to proceed with the redemption without direction from the court because he had already issued a deed to Land Associates. Bautista then intervened in this action, naming Land Associates and E & B Investors, Inc. as respondents, and filed allegations in the nature of a complaint asking to set aside the order which authorized the deed and directing the sheriff to permit her to exercise her statutory right of redemption. The trial court dismissed her second amended complaint and she appealed.

The Court of Appeals affirmed this dismissal. It held that Bautista, as the assignee of unjoined junior lien creditors, had no right to statutory redemption, relying on *Portland Mtg. Co. v. Creditors Prot. Ass'n.,* 199 Or 432, 262 P2d 918 (1953). We allowed review to consider what redemption rights a lien creditor may have when its interest is acquired pendente lite.

Intervenor Bautista contends that the court erred, in that she claims a statutory right of redemption as an assignee of pendente lite unjoined junior lienholders whose rights were foreclosed because of the doctrine of lis pendens. She argues the order allowing the sheriff's deed should be set aside because respondent did not acquire the rights of all persons entitled to redeem either under former ORS 18.160 (ORCP 71B became effective January 1, 1982) or through the inherent powers of the court.

Respondents Land Associates and E & B Investors argue that because of the doctrine of lis pendens, Bautista actually had no rights in the real property, but rather only a contingent interest that could only attach to the real property if the buyer successfully defended the foreclosure suit. They also argue that because Bautista was not a party to the foreclosure action, she was not in the class of people who are entitled to exercise statutory redemption rights; that this suit was an impermissible collateral attack on the order that allowed the execution of the sheriff's deed; and that the sheriff's deed was absolute.

■ ■ In order to understand the issues in this case, it is necessary to examine the history of mortgages to some extent, even though this case is based on a land sales contract, rather than a mortgage. Originally when one borrowed money on his land, he gave title to the land to the one who loaned the money. The borrower, however, could get his land back by paying the entire sum on a certain day of payment called Law Day. If he defaulted and did not pay the sum on that day, he lost all rights to his land. There were times when this absolute deadline resulted in injustices (as when the borrower was robbed on his way to Law Day), and the Court of Chancery conceived the idea of equitable redemption to soften this harsh rule. This allowed the borrower to come into court after default, and if he told a convincing story, he was allowed to force a reconveyance of the land. This remedy itself led to abuses, because the borrowers were allowed to reclaim their land years after they should have repaid the money. The Chancery Court, aware of the problems, then created the remedy of foreclosure. Foreclosure was designed to end the period of equitable redemption so that the new owner could be sure that his title was secure and the previous owner could not redeem the land.[1] Foreclosure, then, forecloses the previous owner from exercising the equitable right of redemption. Equitable redemption only allows a junior lien creditor to redeem from the senior lien holder and become subrogated to his interests.

■ Mortgage law continued to change; however, the theory underlying mortgages changed from the mortgage giving the lender actual title to the property subject to the right of equitable redemption to the concept that the mortgage only gives the lender a lien on the property. This theory led to foreclosure and sale, rather than the earlier strict foreclosure that was considered equitable under the title theory. Most states, including Oregon, that adopted a lien theory of mortgage also enacted statutory redemption as an additional remedy. The period for statutory redemption[2] starts after the foreclosure and sale itself and is one

---

[1] See 3 Powell, *Real Property* §§ 438-439, 462 (rev ed 1981); Walsh, *Mortgages*, §§ 1-3, 6 (1934); Kratovil, *Modern Mortgage Law and Practice* §§ 1-7 (1972).

[2] Bautista claims a right to redeem under ORS 23.530 and 23.540:

last chance for the previous owner and any lien creditors to regain the property. It is important to distinguish the two types of redemption - equitable redemption only exists until the interest is foreclosed, while statutory redemption only begins after the interest is foreclosed.

In the present case, the Court of Appeals relied on *Portland Mtg. Co., supra,* indicating that while arguably Bautista might have an equitable right of redemption, she did not have a statutory right of redemption. In this it is mistaken. *Portland Mtg. Co.* concerned an attempted redemption by junior lien creditors who were not joined in the foreclosure action. This court held that they had no right to statutory right to redeem because their interest had not been foreclosed. Those creditors were lienholders of record when the initial petition was filed; because they were not joined they were not bound by the foreclosure, and a statutory right of redemption did not arise.

■ ■ The present situation differs because Bautista's predecessors were not lienholders of record when the initial complaint was filed. The doctrine of lis pendens controls here. This doctrine states that the filing of a suit concerning real property is notice to people who obtain an interest

---

"ORS 23.530. Property sold subject to redemption, as provided in ORS 23.520, or any part thereof separately sold, may be redeemed by the following persons:

"(1) The mortgagor or judgment debtor whose right and title were sold, or his heir, devisee or grantee, who has acquired, by inheritance, devise, deed, sale, or by virtue of any execution or by any other means, the legal title to the whole or any part of the property separately sold; provided, that in the event redemption is made by anyone acquiring the legal title after attachment, or after a judgment becomes a lien on the property, such person shall acquire no greater or better right thereby to the property so redeemed than the holder of the legal title at the time of such attachment or judgment.

"(2) A creditor having a lien by judgment, decree or mortgage on any portion of the property, or any portion of any part thereof separately sold, subsequent in time to that on which the property was sold. Such creditors, after having redeemed the property, are to be termed redemptioners."

"ORS 23.540. A lien creditor may redeem the property within 60 days from the date of the sale by paying the amount of the purchase money, with interest at the rate of 10 percent per annum thereon from the time of sale, together with the amount of any taxes which the purchaser may have paid thereon, and any other sum which the judgment debtor might be required to pay for redemption, with like interest, and if the purchaser is also a creditor having a lien prior to that of the redemptioner, the amount of such lien, with interest; provided, that if objections to any sale are filed, a lien creditor may redeem within 60 days from the date of the order confirming the sale."

in the property after the commencement of the suit that they will be bound by the outcome of the suit. *Puckett v. Benjamin,* 21 Or 370, 381, 28 P 65 (1891). It is a necessary doctrine; without it every change of ownership or lesser interest in real property would require a modification of the suit and would require continual checking of the records to be sure that someone else had not obtained property rights in the property in question. Respondents argue that the doctrine means that any change of ownership during the pendency of the suit does not have any legal effect until the outcome of the suit, but in this they are mistaken. *Kaston v. Storey,* 47 Or 150, 154, 80 P 217 (1905). The doctrine of lis pendens does not change a property owner's right to transfer interests in a property even though a foreclosure suit is pending, and it also does not stop another person from gaining an interest by becoming a lien creditor after the suit is filed, as did Bautista's predecessors in interest in the present case.

■ The doctrine of lis pendens, however, binds Bautista's predecessors in interest by the foreclosure suit. This is the major difference between the present case and *Portland Mtg. Co.* In *Portland Mtg. Co.,* because the lien creditors of record were not joined, they were not bound by the foreclosure; thus the statutory right of redemption did not arise and their only recourse would have been the equitable right of redemption.

The situation in the present case is just the opposite; because the interests did not arise until after the foreclosure suit started, the doctrine of lis pendens means that the holders of these interests are bound by the decree of foreclosure and thus their interests were foreclosed along with those of the buyer and the lien creditors who were joined in the suit. Because their interests were foreclosed, their statutory right of redemption then came into existence. Bautista acquired these rights by the assignment. She thus is in the class of people who can exercise the rights of statutory redemption.

■ Respondents also argue that this suit is an impermissible collateral attack on the order that allowed the execution of the sheriff's deed. However, because Bautista is an intervenor and is trying to correct an order in a

proceeding provided for by law for that very purpose she is making a direct attack, which is permissible. *In re Armstrong's Estate,* 159 Or 698, 707-708, 82 P2d 880 (1938). Respondents do not appeal from the November 7, 1980, order allowing Bautista to file the pleadings in this case.

Respondents also contend that the sheriff's deed was absolute and absent fraud, the court may not inquire into how it was obtained. The statute controlling the execution of sheriff's deeds is ORS 23.600:

> "If redemption is not made as prescribed in ORS 23.520 to 23.590, or when redemption is made and a period of 60 days has elapsed without any other redemption, the purchaser or redemptioner shall be entitled to a conveyance from the sheriff. If the judgment debtor redeems at any time before the time for redemption expires, the effect of the sale shall terminate and he shall be restored to his estate. [If, at any time prior to the expiration of the statutory period of redemption, it is made to appear to the satisfaction of the court, that the purchaser or redemptioner has acquired the rights of all persons entitled to redeem, the court may direct the sheriff to execute a deed of conveyance to such purchaser or redemptioner forthwith, and upon the execution thereof the title of such purchaser or redemptioner shall become absolute."]

The bracketed portion of the statute was added in 1931. (OL 1931 Ch 129). There is no legislative history to guide us in the interpretation of this statute, and it has not been previously construed. Bautista argues that because respondents did not actually acquire the rights of all persons entitled to redeem in the present case, the court's order directing the sheriff to execute the deed should be set aside based on former ORS 18.160 or the general equitable powers of the Court.

Redemption statutes should be liberally construed. *Ulrich v. Lincoln Realty Co.,* 175 Or 296, 305, 153 P2d 255 (1944). Because there is no legislative history to aid our inquiry, we look to the purpose of the statute. Bautista contends, and we agree, that the purpose of this amendment is to avoid requiring the purchaser to mark time needlessly for the remainder of the 60 days when the purchaser holds all the possible rights to redemption.

Respondents, however, contend that the phrase "it is made to appear to the satisfaction of the court" means precisely what it says, and the reality of whether the purchaser has acquired the rights of all the people who are entitled to redeem does not matter. We disagree. The legislature surely did not amend this statute to encourage purchasers at a sale to neglect searching the title or to practice misrepresentation or fraud upon the court.

■ We hold that a purchaser at such a sale may take advantage of ORS 23.600 only when in actuality he has acquired all rights of redemption, and the phrase "it is made to appear to the satisfaction of the court" concerns the manner and type of proof that the court will accept.

■ In the present case, there is no evidence in the record that Land Associates acquired these statutory redemption rights except a waiver of these rights by one of the defendants. It is obvious that Land Associates could not have proven to the trial court by any manner or type of proof that it had acquired all the rights of redemption because it had not, at that time or any time, acquired those of Bautista's assignors.

We do not need to examine the evidence Land Associates might have presented, or speculate on whether oral or written allegation, affidavits, or non-certified copies of waivers of the rights would have met this standard. Land Associates was not entitled to take advantage of this statute that allows an acceleration of the waiting time for a sheriff's deed because it had not acquired all the redemption rights.

■ ■ We next must consider whether Bautista is entitled to relief under ORS 18.160 or the general equitable powers of the court. Former ORS 18.160 permits a court, in its discretion, to "relieve a party from a judgment, decree, order, or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect." This statute is to be liberally construed. *Wagar v. Prudential Ins. Co.,* 276 Or 827, 832, 556 P2d 658 (1976). Respondents contend that Bautista is not a party and thus does not qualify for relief under this statute. Although Bautista's assignors were not named parties in the foreclosure proceedings, the operation of lis pendens bound her assignors

as though they were parties. Bautista thus was allowed to intervene. She also qualifies as one who may get relief under this statute.

Land Associates obtained the ex parte order one day before the sale itself was confirmed. This was only 27 days after the sale and 33 days before the end of the statutory redemption period. Someone is Buatista's position could have no reason to believe that a court would issue an ex parte order before the confirmation of the sale and before the end of the statutory redemption period. We hold, therefore, that the order should be set aside under former ORS 18.160. Because of this decision, we do not examine whether the general equitable powers of the court would also support this result.

Respondents advance one final argument: that the word "absolute" in the statute means exactly what it says, and one may not look behind the sheriff's deed after it is issued.[3] They contend that the legislative assembly enacted ORS 23.600 to add certainty and predictibility to the foreclosure process and to encourage the bidding of higher prices at sheriff's sales. They argue that this would benefit both debtors (who may realize a greater proportion of any surplus value of their property) and junior lien creditors (who are more likely to be paid from the proceeds of the sale).[4] We need not consider this argument because although the statute says that upon the execution of a deed of conveyance "the title of such purchaser or redemption shall become absolute," if the court lacked jurisdiction over the property or one or more of the owners of the property had not been joined, then the title could not be absolute in the way the respondents contend.

---

[3] Bautista argues that the word "absolute" in the statute refers to the quality of the estate that the purchaser or redemptioner takes, as in "fee simple absolute." This cannot be the meaning, because other estates, including life estates and leaseholds of more than two years, may be foreclosed and redeemed.

[4] The other side of the argument is that the "prime purpose" of granting statutory rights of redemption to mortgagors in the first place "was to exert pressure by means of the threat of redemption which would cause mortgagees to bid a fair value at foreclosure sales." A secondary reason was to allow the mortgagor additional time to refinance in order that he might save the property. Note, *Effect of Statutory Redemption by a Mortgagor or his Grantee in Oregon*, 27 Or L Rev 139, 140 (1948).

■ The better reading of the statute is that if a purchaser or redemptioner actually has acquired all the redemption rights, and is entitled to have the deed of conveyance issued before the end of the regular statutory redemption period, then no one may later attempt to redeem. The word "absolute" does not actually add anything to the statute; it simply means that after one has waived his right to redeem, he may not later attempt to do so. This interpretation is consistent with the way "absolute" is used in another statute. ORS 23.530 states: "Upon a sale of real property, when the estate is less than a leasehold of two years' unexpired term, the sale shall be absolute. In all other cases such property shall be subject to redemption as provided in ORS 23.530 to 23.600." The word "absolute" here is in opposition to the phrase "subject to redemption." It has no connotation that if the proceedings were irregular, the sale could not be set aside.

The legislative assembly would not create valuable statutory rights and then allow a purchaser or redemptioner to eliminate these rights by asking the court for an early deed, even though he had not obtained all rights of redemption. This would make the supposedly valuable rights to redemption useless, and would be contrary to the express intent to give lienholders a full 60 days in which to decide whether they want to exercise their rights. The actual acquisition of all rights of redemption is a condition precedent to the utilization of ORS 23.600; without this, the title acquired is not "absolute," but rather a nullity. When the order authorizing the sheriff's deed is set aside, the deed itself must also be set aside.

Reversed and remanded.