Cynthia YOUNG, Appellant,

v.

Kenneth EMBLEY, Appellee.

No. S–11584.

Supreme Court of Alaska.

Sept. 8, 2006.

Kneeland Taylor, Anchorage, for Appellant.

James T. Stanley, Amodio, Stanley & Reeves, Anchorage, for Appellee.

Before: BRYNER, Chief Justice, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I.  INTRODUCTION

Cynthia Young cohabited with David Dang for several years and ran a bed and breakfast establishment with him. Unbeknownst to Young, Dang executed a deed of trust on the property granting a security interest to Donald Joyner, from whom he had borrowed money. Kenneth Embley later acquired Joyner's interest. Dang then purportedly granted Young a lien on the property, securing an obligation to her. Dang defaulted on both obligations. Embley foreclosed on the deed of trust, acquiring the property at a nonjudicial foreclosure sale. Young attempted to halt the sale by asserting that she had the right to cure Dang's default, but the sale went ahead. The superior court declined to set aside the sale. Young appeals. Because junior lienholders have the right to cure a senior interest holder's default on a deed of trust, we reverse the judgment of the superior court and remand for a determination of the nature of Young's interest in the property.

## II.  FACTS AND PROCEEDINGS

### A.  Facts

This case concerns the disposition of property located at 2910 West 31st Avenue in the Spenard area of Anchorage. Cynthia Young and David Dang lived on and operated the property as a bed and breakfast called "The Alaska Wilderness Plantation."[1] Dang held sole title to the property. Even so, Young held herself out as an "owner" of the property. She also used the name "Cynthia Dang" though she and Dang never married. Young and Dang have a daughter who was five years old in 2004.

On August 30, 2002 Dang executed a deed of trust on the property, using the property to secure a $40,000 loan made by Donald Joyner. Young was apparently unaware of the execution of this deed of trust. Dang subsequently defaulted on the deed of trust and Joyner had a notice of default recorded by Land Title Company of Alaska on November 21, 2002 and posted shortly thereafter. A foreclosure sale was scheduled for February 25, 2003. Joyner then sold the note and assigned his interest to appellee Kenneth Embley. The foreclosure sale was delayed

---

1. The property is of some renown as the former residence of Anchorage businessman Peter Zamarello.

to allow Embley to complete his purchase of the note.

On March 3, 2003, Dang executed an agreement in favor of Young that promised to pay Young $158,000 "as a sep[a]ration settlement." The agreement also provided that Young would have a lien on the property at issue if Dang failed to pay her $50,000 on March 4, 2003. Dang failed to make the payment, as a result of which Young filed suit against him and recorded a lis pendens on the property.[2]

On March 12 and April 1, 2003 Young asked Embley not to hold the foreclosure sale, asserting that she had not been given the statutorily required notice. Young also asserted at that time that she had the right to cure Dang's default on the Embley/Joyner deed of trust. The sale was postponed until April 25, 2003. On that date Embley provided Young with a "Cure Figure Worksheet" and an "Offset Bid Figure Worksheet" enumerating the amounts for which Dang was in default. Young did not tender a cure at the time but objected to the foreclosure sale, though she did not seek to enjoin it. Embley purchased the property at the foreclosure sale for $165,201.04. Embley also paid the accrued arrearages on the most senior loan on the property, held by First Interbay.

### B. Proceedings

Young filed suit against Embley and Land Title in May 2003, seeking damages, a declaration voiding the foreclosure sale, and seeking a declaration that she was entitled to cure Dang's default. Young amended her complaint to add a demand for punitive damages. Land Title moved to strike Young's request for jury trial, arguing that "[a] suit to set aside a foreclosure sale under a deed of trust is an equitable one." The superior court granted the motion to strike the jury demand.

Young's second amended complaint, filed in November 2003, stated similar claims, including wrongful foreclosure and abuse of process, and again asked for compensatory and punitive damages and equitable relief. The complaint did not include a demand for jury trial. Young moved for reconsideration of the court's order striking her jury demand, which the court denied. Both Embley and Land Title filed motions for summary judgment, which the superior court granted. Young appealed both summary judgments, but later settled with Land Title and withdrew her appeal against it.

### III. STANDARD OF REVIEW

■■■ We apply our independent judgment to questions of law, adopting "the rule of law that is most persuasive in light of precedent, reason, and policy."[3] When a question of statutory interpretation is involved, we will independently evaluate the trial court's interpretation.[4] If a statute is ambiguous "we apply a sliding scale of interpretation, where 'the plainer the language, the more convincing contrary legislative history must be.'"[5] We interpret Alaska law "according to reason, practicality, and common sense, taking into account the plain meaning and purpose of the law as well as the intent of the drafters."[6] We have stated: "In assessing statutory language, unless words have acquired a peculiar meaning, by virtue of statutory definition or judicial construction, they are to be construed in accordance with their common usage."[7]

■■■ We use our independent judgment in reviewing a grant of summary judgment, "drawing all factual inferences in favor of, and viewing the facts in the light most favor-

---

2. *Young v. Dang*, No. 3AN–03–5442 CI (complaint filed Mar. 11, 2003). Embley's counsel wrote Young's counsel declaring the lis pendens to be a slander of title and asking that it be removed.

3. *Lawson v. Lawson*, 108 P.3d 883, 885 (Alaska 2005).

4. *Nystrom v. Buckhorn Homes, Inc.*, 778 P.2d 1115, 1118 (Alaska 1989).

5. *Tesoro Petroleum Corp. v. State*, 42 P.3d 531, 537 (Alaska 2002) (citations omitted).

6. *Native Village of Elim v. State*, 990 P.2d 1, 5 (Alaska 1999).

7. *Gov't Employees Ins. Co. v. Graham–Gonzalez*, 107 P.3d 279, 284 (Alaska 2005) (quoting *Muller v. BP Exploration (Alaska) Inc.*, 923 P.2d 783, 787–88 (Alaska 1996)).

able to the non-prevailing party (generally the non-movant)."[8] We will affirm a grant of summary judgment if there are no genuine issues of material fact and the prevailing party was entitled to judgment as a matter of law.[9] Where, as here, the superior court granted summary judgment without articulating its reasoning, we examine all grounds on which the movant (Embley) relied to determine if any were sufficient.[10]

## IV. DISCUSSION

### A. Junior Lienholders Are Entitled to Equitable Redemption on a Deed of Trust.

#### 1. The history of equitable redemption

While this appeal concerns the extent of a statutory right, we must begin with a brief detour into the history of mortgages. The mortgage was created by the early English court as a transfer of title from the mortgagor to the mortgagee, generally as security for a loan by the mortgagee to the mortgagor. Once the mortgagor repaid the loan proceeds, title to the property would return to him.[11] If, however, the mortgagor failed to pay the mortgage by the due date, called the law day, he would forfeit all interest in the property. This deadline applied without exception, "even if the mortgagor could not find the mortgagee to pay him,"[12] or if "the borrower was robbed on his way to Law Day,"[13] and thus often resulted in injustice.

In response to these injustices, the Court of Chancery created the remedy of equitable redemption. Equitable redemption "allowed the borrower to come into court after default, and if he told a convincing story, he was allowed to force a reconveyance of the land."[14] When mortgagors began to take advantage of this remedy, sometimes redeeming the property years after law day, the Court created the remedy of foreclosure "to end the period of equitable redemption so that the new owner could be sure that his title was secure and the previous owner could not redeem the land."[15] Thus, a mortgage is said to carry with it an equity of redemption, "the right, until the foreclosure sale, to reimburse the mortgagee and cure the default."[16] But this (mortgagor's) remedy of equitable redemption is limited by the (mortgagee's) remedy of foreclosure.

While at common law the execution of a mortgage required transfer of title, most American jurisdictions, Alaska included, now recognize mortgages under the "lien theory," which treats the mortgage as merely a security interest in the property "and confers no right to possession of that real estate on the mortgagee."[17] Accordingly, the mortgagor

8. *Rockstad v. Erikson,* 113 P.3d 1215, 1219 (Alaska 2005).

9. *Id.*

10. *Yates v. Halford,* 73 P.3d 1236, 1240 (Alaska 2003).

11. *See* 1 GRANT S. NELSON & DALE A. WHITMAN, REAL ESTATE FINANCE LAW § 1.2, at 6–7 (4th ed.2002).

12. *Id.* at 7.

13. *Land Assocs., Inc. v. Becker,* 294 Or. 308, 656 P.2d 927, 930 (1982).

14. *Id.*

15. *Id.* at 931.

16. BLACK'S LAW DICTIONARY 561 (7th ed.1999).

17. RESTATEMENT (THIRD) OF PROP.: MORTGAGES § 4.1(a) (1997). *See* AS 09.45.680; ARIZ.REV.STAT. ANN § 33–703(A) (2005); CAL.CIV.PROC CODE § 744 (West 2006); COLO.REV STAT. ANN. § 38–35–117 (West 2000); *Matter of Spencer,* 115 B.R. 471, 477 (D.Del.1990); FLA. STAT. ANN. § 697.02 (West 1994); GA.CODE ANN. § 44–14–30 (West 2006); HAW.REV.STAT ANN. § 506–1 (LexisNexis 2005); IDAHO CODE ANN. § 6–104 (2005); *Egbert v. Egbert,* 235 Ind. 405, 132 N.E.2d 910, 918 (1956); IOWA CODE ANN. § 557.14 (West 1992); *Hoelting Enters. v. Trailridge Investors, L.P.,* 17 Kan.App.2d 777, 844 P.2d 745, 749 (1993); *Watt's Adm'r v. Smith,* 250 Ky. 617, 63 S.W.2d 796, 800 (1933); *Midwest Bank v. O'Connell,* 158 Mich.App. 565, 405 N.W.2d 201, 203 (1987); MINN STAT. ANN. § 559.17(1) (West 2000); MONT.CODE ANN. § 71–1–105 (2005); NEB REV.STAT. § 76–276 (2005); NEV. REV.STAT. ANN. § 40.050 (West 2006); N.M. STAT. ANN. § 48–7–1 (West 2006); N.Y. REAL PROP. LAW § 611(3) (McKinney 1979); N.D. CENT.CODE § 35–03–01.1(1) (2005); OKLA. STAT. ANN. tit. 42, § 10 (2001); OR.REV.STAT. ANN. § 86.010 (West 2003); S.C.CODE ANN. § 29–3–10 (2005); *State of Wis. Inv. Bd. v. Hurst,* 410 N.W.2d 560, 564 (S.D.1987); *Taylor v. Brennan,* 621 S.W.2d 592, 593 (Tex.1981); UTAH CODE ANN. § 78–40–8 (West 2006); WASH. REV.CODE ANN. § 7.28.230(1) (West 2006); *Glover v. Marine Bank of Beaver Dam,* 117

"has the right to possession until there has been a valid foreclosure."[18] We stated, in *Brand v. First Federal Savings & Loan Ass'n of Fairbanks:*[19] "In light of our territorial precedents, likely reliance thereon, and the provisions of AS 09.45.680, we believe that the territorial view that mortgages in Alaska convey to the mortgagee only a lien, not any sort of title, should be retained."[20] The lien theory, we noted, "is said to mark 'a distinct advance in legal ideas' over the 'crude conception' of the title theory."[21]

Mortgages under the lien theory continue to carry the equity of redemption. Alaska has partly codified the mortgagor's right of redemption. Under AS 09.35.250, "The judgment debtor or a successor in interest may redeem the property before confirmation of sale on paying the amount of the purchase money, with interest" and any taxes due. Alaska has also enacted a procedure for redemption by the debtor within a year *after* confirmation of the foreclosure sale.[22] This statutory enactment does not occupy the field, however, as we continue to recognize judicially the right of equitable redemption.[23] This view is in line with the Restatement, which declares that

> a performance in full of the obligation secured by a mortgage ..., by one who is primarily responsible for performance of the obligation, redeems the real estate from the mortgage.... Performance may be made prior to the time the obligation is due ... or may be made at or after the time the obligation is due but prior to foreclosure.[24]

### 2. Redemption of deeds of trust

We treat deeds of trust as identical to mortgages in almost all respects.[25] In *Brand,* we stated: "A deed of trust is 'a

---

Wis.2d 684, 345 N.W.2d 449, 453 (1984); *L Slash X Cattle Co. v. Texaco, Inc.*, 623 P.2d 764, 768–69 (Wyo.1981).

**18.** 1 NELSON & WHITMAN § 1.5, at 10. Some states still use the common-law title theory while others use a hybrid or intermediate theory, which gives the right of possession to the mortgagor at least until default, and, generally, gives it to the mortgagee after default. *See id.*

**19.** 478 P.2d 829 (Alaska 1970).

**20.** *Id.* at 831. AS 09.45.680 provides: "Mortgage not a conveyance. A mortgage of real property is not a conveyance that will enable the owner of the mortgage to recover possession of the property without a foreclosure and sale." *See Lewis v. Wells*, 85 F. 896, 902 (D.Alaska 1898) ("[U]nder the laws of Oregon, which, by the act of congress of May 17, 1884, became the laws of this district, a mortgage does not convey title, but only creates a lien upon real property.").

**21.** *Brand,* 478 P.2d at 831.

**22.** AS 09.35.250. Alaska's redemption statutes also allow either the debtor or a creditor having a lien on the property "subsequent in time to that on which the property was sold" to redeem the property within sixty days of the order confirming the foreclosure sale. AS 09.35.220, AS 09.35.230 & AS 09.45.190. This right does not extend to deeds of trust. *See* AS 34.20.090(a):
> The sale and conveyance transfers all title and interest that the party executing the deed of trust had in the property sold at the time of its execution, together with all title and interest that party may have acquired before the sale,

and the party executing the deed of trust or the heirs or assigns of that party have no right or privilege to redeem the property, unless the deed of trust so declares.

**23.** *See, e.g., Harris v. Alaska Title Guar. Co.*, 510 P.2d 501, 503 & n. 3 (Alaska 1973). *See also* 2B NORMAN A. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 50:02, at 146 (6th ed.2000 rev.) (The provision of statutory remedies "does not per se preclude resort to appropriate common-law remedies."). Although the legislature has the ability to abolish common-law rules and remedies, "such an intent is not to be presumed in the absence of clear and explicit language." 2B SINGER, § 70:4, at 499.

**24.** RESTATEMENT (THIRD) OF PROP: MORTGAGES § 6.4(a) (1997).

**25.** Our statutes explicitly treat deeds of trust as mortgages in form; AS 34.20.110 states that "[f]or the purposes of record, a deed of trust, given to secure an indebtedness, shall be treated as a mortgage of real estate, and recorded in full in the book provided for mortgages of real property." The Restatement refers to a deed of trust as a type of mortgage. RESTATEMENT (THIRD) PROP.: MORTGAGES, *Introduction*, at 3. In some states different theories apply to mortgages and deeds of trust. For example, contrast GA.CODE ANN. § 44–14–30 ("A mortgage in this state is only security on a debt and passes no title.") with GA.CODE ANN. § 44–14–60 (A deed of trust is "an absolute conveyance, with the right reserved by the grantor to have the property reconveyed to him upon payment of the debt ... and shall not be held to be a mortgage.").

mortgage in effect,' being only a somewhat different device for accomplishing the same purpose, creating a security interest in land.... [A] deed of trust does not move title out of the trustor, but only creates a lien."[26] Because mortgages and deeds of trust are virtually identical, and because mortgages carry the equity of redemption, we conclude that deeds of trust also carry the equity of redemption.

In contrast to mortgages, however, there is no statutory post-sale redemption available under a deed of trust unless the deed of trust so provides.[27] Instead of post-sale redemption, AS 34.20.070(b) provides a statutory right of cure under a deed of trust. The statute states that foreclosure may be forestalled by payment of arrearages, costs and attorney's fees.[28] Equitable redemption traditionally requires the payment of the full amount of debt owed in order to clear the property of the previous encumbrance. If only a portion of the debt is in default, however, then that portion can be redeemed separately with the consent of the obligee.[29] Alaska Statute 34.20.070(b) forces the lender to accept partial payments when a deed of trust is in default. The crux of this case is to determine from whom the lender must accept those payments.

### 3. The equity of redemption extends to junior lienholders on the property secured by the deed of trust.

The traditional right of equitable redemption generally extends in some manner to holders of interests junior to the obligor's interests. Under the Restatement approach,

A performance in full of the obligation secured by a mortgage, or a performance that is accepted by the mortgagee in lieu of payment in full, by one who holds an interest in the real estate subordinate to the mortgage but is not primarily responsible for performance, does not extinguish the mortgage, but redeems the interest of the person performing from the mortgage and entitles the person performing to subrogation to the mortgage.... Such performance may not be made until the obligation secured by the mortgage is due, but may be made at or after the time the obligation is due but prior to foreclosure.[30]

This right of redemption for junior interest holders exists to protect their interests since a foreclosure cuts off all interests junior to the one foreclosed. Junior interests that are protected "include junior mortgagees, the holders of junior mechanics' liens and other liens, junior lessees, and easement holders."[31] As the Washington Court of Appeals has held, in order to possess equitable redemption rights, "a person must have an interest in land and it must be derived in some way ... from or through or in the right of the mortgagor so as to constitute a part of the mortgagor's original equity of redemption."[32] More than a century ago the Oregon Supreme Court stated the proposition even more broadly, holding that the right of redemption "exists not only in the mortgagor himself, but in *every other person* who has an

---

**26.** *Brand*, 478 P.2d at 831–32 (quoting R. POWELL, THE LAW OF REAL PROPERTY 553 (1970) (other citations omitted)).

**27.** *See* AS 34.20.090(a), *supra* n. 22, providing that no right of redemption exists "unless the deed of trust so declares."

**28.** AS 34.20.070(b).

**29.** The Restatement notes that, with some exceptions, "a performance in full of the obligation secured by a mortgage, *or a performance that is accepted by the mortgagee in lieu of performance in full* ... redeems the real estate from the mortgage." RESTATEMENT (THIRD) OF PROP.: MORTGAGES § 6.4(a) (1997) (emphasis added). The common law rule is that a mortgagee may insist on a partial redemption. *See* 1 NELSON & WHITMAN § 7.3, at 609. Under AS 34.20.070(b) the ability

to insist on partial redemption is mutual. In the present case Embley exercised his equity of redemption by paying the accrued arrearages on the most senior lien on the property, held by First Interbay. Embley's payments were not a full payment of the First Interbay loan but were only the amount of debt in default. First Interbay consented, however, to this partial redemption.

**30.** RESTATEMENT (THIRD) OF PROP.. MORTGAGES § 6.4(e).

**31.** *Id.* at § 6.4 cmt.g.

**32.** *Brost v. L.A.N.D., Inc.*, 37 Wash.App. 372, 680 P.2d 453, 455 n. 3 (1984).

interest in, or legal or equitable lien upon, the mortgaged premises, and includes judgment creditors, all of whom may insist upon a redemption of the mortgage."[33]

Thus, we conclude that a junior lienholder holds a right of redemption under a deed of trust. The equity of redemption, as we have stated, would normally require payment of the full amount mortgaged. We now consider whether a junior lienholder is entitled to invoke AS 34.20.070(b) and require the obligee to accept payment of arrearages to cure a senior interest holder's default.

## B. A Junior Lienholder is Protected by the Cure Provision of AS 34.20.070(b).

### 1. The plain meaning of the statute supports an expansive interpretation.

The parties vigorously dispute the meaning of AS 34.20.070(b), which provides for cure of a defaulted deed of trust before foreclosure by the obligee.[34] That statute states, in relevant part:

> At any time before the sale, if the default has arisen by failure to make payments required by the trust deed, the default may be cured by payment of the sum in default other than the principal that would not then be due if no default had occurred, plus attorney fees or court costs actually incurred by the trustee due to the default. If, under the same trust deed, notice of default under this subsection has been recorded two or more times previously and the default has been cured under this subsection, the trustee may elect to refuse payment and continue the sale.

Embley argues that the statute must be read as granting a right of cure only to obligors because the statute makes no mention of other persons. Young argues that the statute should be read more broadly because it uses the passive voice rather than designating the beneficiary of the right of de-acceleration. Young proposes that we interpret AS 34.20.070(b) to protect the same classes of persons who are entitled to notice of foreclosure under AS 34.20.070(c). That subsection requires the trustee to notify:

> (1) the grantor in the trust deed; (2) the successor in interest to the grantor whose interest appears of record or of whose interest the trustee or the beneficiary has actual notice, or who is in possession of the property; (3) any other person in possession of or occupying the property; (4) any person having a lien or interest subsequent to the interest of the trustee in the trust deed, where the lien or interest appears of record or where the trustee or the beneficiary has actual notice of the lien or interest.

Young thus claims a right to cure Dang's default either as a possessor or occupant of the property or as a holder of a subsequent interest in the property.

33. *Sellwood v. Gray,* 11 Or. 534, 5 P. 196, 198 (1884) (emphasis added). *Accord John Stepp, Inc. v. First Fed. Savs. & Loan Ass'n of Miami,* 379 So.2d 384, 386 (Fla.4th DCA 1980) ("[T]he law favors redemption by anyone who has an interest in the mortgaged premises who would be a loser by foreclosure."); *Am. Button–Hole, Overseaming & Sewing Mach. Co. v. Burlington Mut. Loan Ass'n,* 61 Iowa 464, 16 N.W. 527, 528 (Iowa 1883) ("The general doctrine undoubtedly has been that a junior lienholder has an equitable right to redeem from a mortgage debt."); *First Fed. Savs. & Loan Ass'n of Port Washington v. Smith,* 83 A.D.2d 601, 441 N.Y.S.2d 309, 310 (App.Div.1981) ("Clearly, the owner of the equity of redemption or any person with an interest in the mortgaged premises has a right to redeem the property at any time prior to the actual sale under a judgment of foreclosure.").

34. We have not previously considered the meaning of AS 34.20.070(b) to any great extent. Our only substantive discussion of the statute is found in *Hagberg v. Alaska National Bank,* 585 P.2d 559 (Alaska 1978), where we assumed a narrow meaning of the language, describing the 1976 amendment as designed "to permit the obligor under a note secured by a deed of trust to terminate a non-judicial deed of trust sale by paying all arrearages." *Id.* at 560. We went on to state, in dicta, that under the amendment "[a]n obligor on a note must still pay the principal and interest.... However, the defaulting obligor may bring his payments current and stop the non-judicial foreclosure as a matter of right only twice." *Id.* at 561–62. Finally, we referred to the right of cure as "[t]he right of an obligor to call a halt to a nonjudicial foreclosure" which imposes on the lender a duty "to seasonably advise the obligor on request of the amount in default." *Id.* at 562.

In matters of statutory interpretation, "we must give effect to the intent of the legislature, with due regard to the meaning that the statutory language conveys to others."[35] If a statute is unambiguous and expresses the legislature's intent, we will not modify or extend it by judicial construction.[36] However, in cases where the plain language of the statute permits more than one plausible interpretation, we apply a sliding scale: "[T]he plainer the language, the more convincing contrary legislative history must be."[37] Thus, the inquiry begins with the text of the statute, buttressing the text with legislative history if necessary.

The language at issue here was adopted in 1976.[38] As the parties have argued, the language admits of two possible interpretations. The legislature may have omitted express mention of obligors because it assumed that the reference would apply only to obligors; alternatively, it may have omitted express mention because it wished to include other interested persons such as those listed in AS 34.20.070(c). From the plain text either interpretation is plausible.[39]

Because the statute is written in the passive voice—it states that the "default may be cured"—its meaning is ambiguous. In *Exxon Corp. v. State*,[40] we considered the terms of a contract which stated that the Prudhoe Bay oil and gas unit "may be enlarged from time to time."[41] In determining whether Exxon or the state was entitled to enlarge the unit, we held that "the language is am-

biguous. The passive voice can be ambiguous."[42] Since, however, subsequent sections of the contract in that case laid out procedures by which the state could decide on unit expansion, we held that only the state was entitled to expand the unit.[43] Likewise, AS 34.20.070(b) is ambiguous because it uses the passive voice. And, as was the case with the contract in *Exxon*, the statutory context provides some guidance: AS 34.20.070(c), in establishing a broad group of persons entitled to notice of foreclosure, suggests that the right of cure extends beyond the obligor.

### 2. Legislative history does not rebut an expansive interpretation of the statute.

At the first hearing on the bill, its sponsor Rep. Sullivan noted that the then-current law permitted foreclosure if a mortgagor was only one day late in payment.[44] At a subsequent hearing Rep. Sullivan stated that the legislation "gives the buyer a chance to get caught up to date."[45] A further committee statement indicated that the bill would prevent an unscrupulous seller from "vulturing in wait of a missed payment."[46]

These statements certainly indicate a legislative assumption that the right of de-acceleration would extend to the obligor. While the legislature concerned itself chiefly with the substance of the right rather than the persons to whom it would extend, there is no hint in the statements that an expansive in-

---

**35.** *Tesoro Petroleum Corp. v. State*, 42 P.3d 531, 537 (Alaska 2002) (citation omitted).

**36.** *Id.*

**37.** *Id.*

**38.** Ch. 176, § 1, SLA 1976.

**39.** For an example of a statutory scheme that clearly specifies to whom the right of cure extends, see CAL. CIV.CODE § 2924c(a)(1) (cure may be exercised by "the trustor or mortgagor or his or her successor in interest in the mortgaged or trust property or any part thereof, or any beneficiary under a subordinate deed of trust or any other person having a subordinate lien or encumbrance of record thereon.").

**40.** 40 P.3d 786 (Alaska 2001).

**41.** *Id.* at 794.

**42.** *Id.* (citing *Plate v. State*, 925 P.2d 1057, 1065 (Alaska App.1996) (ambiguity due to passive voice in evidence rule resolved by resort to commentary to rules); *E.I. du Pont de Nemours & Co. v. Train*, 430 U.S. 112, 128, 97 S.Ct. 965, 51 L.Ed.2d 204 (1977) (other portions of federal statute relevant to resolution of ambiguous passive language)).

**43.** *Id.* at 794–95.

**44.** 1975–76 Minutes of the House Judiciary Committee, May 19, 1975, at 141.

**45.** 1975–76 Minutes of the House Judiciary Committee, Mar. 24, 1976, at 229.

**46.** 1975–76 Minutes of the House Judiciary Committee, Apr. 3, 1976, at 242.

terpretation of the statute would conflict with legislative intent.[47]

### 3. The common law supports an expansive reading of the statute.

Especially when statutory language and legislative history are ambiguous, we look to the common law[48] as a useful tool to discern legislative intent and to interpret statutes. "The common law ... furnishes one of the most reliable backgrounds upon which analysis of the objects and purposes of a statute can be determined."[49] By statute dating back to territorial days, Alaska has adopted the common law (where not inconsistent with federal or state constitutions or with state statutes) as "the rule of decision in this state."[50] We presume that the legislature is aware of the common law when enacting statutes.[51] Moreover, the common law is an especially important tool when "a statute attempts to restate the common law."[52] We have stated that "[s]tatutes which establish rights that are in derogation of common law are to be construed in a manner that effects the least change possible in common law."[53]

The equity of redemption, as we have discussed, is analogous to the right of cure granted by AS 34.20.070(b). If a lienholder is able to redeem the property, then that person should also be able to cure a default. As Young argues in her brief, cure "is a more liberal right than the right of redemption," indicating that anyone entitled to redeem should also have the right to cure. We have characterized cure as a type of redemption: "If the party who executes the deed of trust defaults the obligation, the party nonetheless has a right of redemption. In other words, the party has the opportunity to cure the default at any time *before* a nonjudicial sale."[54] Therefore, just as the junior lienholder has the right to redeem a mortgage, we determine that the junior lienholder also possesses the right to cure default on a deed of trust before the foreclosure sale. Our conclusion is further buttressed by the twin principles that redemption statutes should be construed liberally[55] and that equi-

47. We may presume that the legislature was aware of the effect of drafting in the passive voice. *See Employment Sec. Comm'n v. Wilson*, 461 P.2d 425, 428 (Alaska 1969) ("[W]e may assume that the legislature knew and understood the rules of grammar.").

48. Here we use the term "common law" in the very general sense of the decisions and principles that form the basis of our legal system, encompassing both the traditional realms of law and equity.

49. 2B SINGER, *supra* n. 23, § 50:01, at 139.

50. AS 01.10.010.

51. *See* 2B SINGER, *supra* n. 23, § 50:01, at 139–140, 3A SINGER, § 70:4, at 499–500. *See Sears v. State*, 713 P.2d 1218, 1219 (Alaska App.1986) (legislature presumed to be aware of common-law terms of art). *Accord Ultrawall, Inc. v. Wash. Mut. Bank, FSB*, 135 Idaho 832, 25 P.3d 855, 859 (2001) (legislature presumed aware of judicial decisions when amending mechanics' lien statute); *In re Proceedings of King County for Foreclosure of Liens for Delinquent Real Prop. Taxes for the Years 1985 Through 1988*, 117 Wash.2d 77, 811 P.2d 945, 950 (1991) (legislature enacting tax foreclosure statute presumed aware of case law on sufficiency of description of property); *Mack Motor Truck Corp. v. Wolfe*, 303 S.W.2d 697, 700–01 (Mo.App.1957) (legislature presumed aware of common law of lien priority); *State ex rel. Gladden v. Lonergan*, 201 Or. 163,

269 P.2d 491, 496 (1954) (legislature presumed to be aware of common-law right preserved by Sixth Amendment).

52. 2B SINGER, *supra*, § 50:02, at 146.

53. *Univ. of Alaska v. Shanti*, 835 P.2d 1225, 1228 n. 5 (Alaska 1992). *See also Roeckl v. Fed. Deposit Ins. Corp.*, 885 P.2d 1067, 1074 (Alaska 1994).

54. *Bauman v. Day*, 892 P.2d 817, 823 n. 5 (Alaska 1995) (emphasis in original). *See also Burnett, Waldock & Padgett Invs. v. C.B.S. Realty*, 668 P.2d 819, 824 (Alaska 1983) (Rabinowitz, J., concurring) (referring to "right to redeem the property under AS 34.20.070(b)").

55. *Land Assocs., Inc. v. Becker*, 294 Or. 308, 656 P.2d 927, 932 (1982); *State ex rel. LeFevre v. Stubbs*, 642 S.W.2d 103, 106 (Mo.1982) ("All doubt will be resolved in favor of the right to redeem."); *Ulrich v. Lincoln Realty Co.*, 175 Or. 296, 153 P.2d 255, 259 (1944). *See* 3A SINGER, § 70:4, at 481–82:

> Statutes allowing foreclosure under a power of sale contained within the trust deed or mortgage are strictly construed against the exercise of such power.
> Legislative provisions giving the mortgagee and junior lienholders the right of redemption after judicial sale have been given a very liberal interpretation so that the property of the

ty abhors a forfeiture.[56]

As noted above,[57] we share the view expressed by the Oregon Supreme Court that the right of equitable redemption on a deed of trust extends beyond the obligor to "every other person who has an interest in, or legal or equitable lien upon, the mortgaged premises." [58] Thus the right of cure granted by AS 34.20.070(b) should extend to those persons. However, this equitable right would not extend to mere occupants or possessors lacking any claim to the property.[59] Thus, if Young wishes to invoke AS 34.20.070(b) she must do so on her claim of interest in the property rather than her occupancy of it.

### C. Young Introduced Enough Evidence of an Equitable Lien To Survive Summary Judgment.

In order to survive Embley's summary judgment motion Young must present "more than a scintilla" of evidence that she possesses some form of protected interest in the property.[60] Young argues that she either had an "unwritten, unrecorded ownership interest in the subject property" or that the facts establish an equitable lien in her favor. We address each claimed interest separately.

■ Young's evidence of an ownership interest includes her own testimony on several points. First, she averred that she and Dang "purchased" the Alaska Wilderness Plantation in January 2002 with "intent to own it as 50/50 partners." According to Young, "This was our intention although the

title was placed solely in David's name." Young stated that "David and I were living together at that point with our child . . . and with two other children, one mine from a previous relationship, and one David's from a previous relationship." She further stated that "David and I purchased the property by assuming a large loan, and by pouring into the property everything we earned." [61] Young asserts that these facts establish her ownership interest in the property under *Bishop v. Clark*.[62] *Bishop* is not on point. In that case we upheld the superior court's finding that a cohabiting couple "impliedly agreed to the distribution of property accumulated during cohabitation" and upheld the court's award of half the couple's assets to Clark.[63] In the present case the superior court made no such findings. Furthermore, even assuming Young's evidence is sufficient to support a division of property, such division would occur only between Young and Dang; Young cannot assert the interest against Embley without first obtaining a judgment specifically granting her an interest in the property. Such an assertion against Embley would otherwise be precluded by the statute of frauds.[64]

■ We turn to Young's claim to an equitable interest. Young's evidence of an equitable lien consists of the note signed by Dang, which purports to memorialize her interest in the property, and her own testimony about Dang's intent to grant her an

---

debtor will satisfy as many of the debtor's liabilities as possible.

56. *See, e.g., Yates v. Halford*, 73 P.3d 1236, 1241 & n. 15 (Alaska 2003).

57. *See supra* n. 33 and accompanying text.

58. *Sellwood v. Gray*, 11 Or. 534, 5 P. 196, 198 (1884).

59. Cf. Restatement (Third) Prop.: Mortgages § 6.4 cmt. g (right of redemption protects "junior mortgagees, the holders of junior mechanics' liens and other liens, junior lessees, and easement holders").

60. *See Meyer v. State*, 994 P.2d 365, 368 (Alaska 1999).

61. Presumably this is a reference to the First Interbay loan in the amount of approximately $500,000.

62. 54 P.3d 804 (Alaska 2002).

63. *Id.* at 810–11.

64. Alaska Statute 09.25.010(a) provides:

In the following cases and under the following conditions an agreement, promise, or undertaking is unenforceable unless it or some note or memorandum of it is in writing and subscribed by the party charged or by an agent of that party:

. . . .

. . . (6) an agreement . . . for the sale of real property, or of any interest in real property, or to charge or encumber real property. . . .

interest.[65] In *Queen of the North, Inc. v. LeGrue*,[66] we adopted the definition of an equitable lien used by the Michigan Court of Appeals: "[A]n equitable lien arises from an agreement that both identifies property and evidences an intention that such property serve as security for an obligation."[67] The note executed on March 3, 2003, coupled with Young's testimony, provides "more than a scintilla of evidence" that Young possessed an equitable lien on the property. We must remand this case to the superior court to determine whether Young did in fact possess such a lien; if she did, then she was entitled to cure Dang's default of the Joyner/Embley deed of trust.

▮▮▮▮ Embley argues that Young failed to preserve her right to cure the default because she failed to tender the cure amount or to seek a stay of the foreclosure sale. The record indicates that Young repeatedly requested a cure amount from Embley, obtaining it only on the morning of the foreclosure sale. Timely provision of the cure amount, Young argues, would have allowed her to tender a cure. As we stated in *Hagberg v. Alaska National Bank*,[68] AS 34.20.070(b) imposes on the lender a duty to "seasonably advise the obligor on request of the amount in default."[69] In that case we held that three days' notice was insufficient.[70] Here, Young's counsel, according to his affidavit, was provided with the figure only as the foreclosure sale was about to begin. Although Embley had a colorable argument that Young was not entitled to the cure figure—and so his failure to provide it was in apparent good faith—our holding today establishes that he had a duty to provide the figure to Young at a reasonable time before foreclosing.[71] Accordingly, Young's failure to seek a stay of the sale is not a basis for ruling that she waived her rights.

▮▮▮▮ Embley also implies that the provision of statutory remedies excludes the availability to Young of an equitable lien. But the provision of statutory remedies does not necessarily preclude traditional remedies. In addition to presuming the legislature's awareness of the common law, we assume "that whenever the legislature enacts a provision, it has·in mind previous statutes relating to the same subject matter, and all should be construed together."[72] In *Donnybrook Building Supply Co., Inc. v. Alaska National Bank of the North*,[73] we held that Donnybrook could not seek an equitable lien because the mechanics' lien statutes establish "a complex and detailed scheme for the protection of suppliers on construction projects."[74] Under these circumstances, we concluded, "The legislature clearly sought to balance the conflicting interests of developers, lenders and suppliers under this statuto-

---

**65.** The handwritten agreement, dated March 3, 2003 and signed by Young and Dang, reads:

Prommisory Note
I Cynthia Young AKA Cynthia Dang agree to accept $200,000.⁰⁰ as a payment of separation settlement: Of this I have recd $42,000.⁰⁰ in increments through Feb. of 2003.
I expect $50,000.00 of this remaining balance to be paid by March 4, 2003 or I will place a lien on existing property known as
    Alaska Wilderness
    2910 West 31st
    Anchorage, Alaska
    99517
Let this be the final notification of the purpose of lien & separation.
    (Signed) Cynthia Young
    (Signed) David Dang

**66.** 582 P.2d 144 (Alaska 1978).

**67.** *Id.* at 149–50 (quoting *Warren Tool Co. v. Stephenson*, 11 Mich.App. 274, 161 N.W.2d 133, 139 (1968)).

**68.** 585 P.2d 559 (Alaska 1978).

**69.** *Id.* at 562.

**70.** *Id.* at 561–62.

**71.** Young also argues that Embley's notice to her as an occupant was deficient under AS 34.20.070(c). Even assuming that Young did not obtain notice until March 12, 2003, she acknowledges that this was forty-five days before the foreclosure sale. Moreover, it appears that Embley postponed the foreclosure sale for some period at Young's request.

**72.** *Hafling v. Inlandboatmen's Union of the Pac.*, 585 P.2d 870, 877 (Alaska 1978), *disavowed on other grounds by State v. Alex*, 646 P.2d 203 (Alaska 1982).

**73.** 736 P.2d 1147 (Alaska 1987).

**74.** *Id.* at 1153.

ry umbrella." [75]  We declined to impose additional remedies in *Donnybrook* because doing so would have disturbed the balance embodied in "a complete and prioritized system of remedies." [76]  In contrast, although Alaska's deed of trust and nonjudicial foreclosure statutes are complex and detailed, they lack the completeness or exclusivity of the mechanic's lien statutes.  For example, AS 34.35.060 provides a detailed priority scheme among competing liens that has no analog in the deed of trust statutes, and a holder of a junior interest to a deed of trust is not confined to statutory remedies.  We cannot say as a matter of law that the equitable lien is unavailable to Young.

Although "a *lis pendens* which relates to an interest arising after the execution of the deed of trust will not affect the title obtained by a purchaser at a valid foreclosure sale," [77] the remedy provided by AS 34.20.070(b) forestalls the ability of the mortgagor to conduct a foreclosure sale.  If Young had a valid interest in the property, then she was denied her right to cure the default and thus the foreclosure sale was invalid.  We have stated our "reluctance to set aside foreclosure sales except in the most unusual circumstances.  Even when the sale fails to comply with the statutory provisions, we will set it aside only in cases that reach 'unjust extremes.' " [78]  The right of cure carries with it a right to prevent the foreclosure sale from ever happening.  Thus, Embley lacked the authority to hold the sale, so it was invalid when it was held. [79]  We need not inquire, then, whether the result of the sale reaches an "unjust extreme."

### D. The Superior Court Did Not Err in Striking Young's Jury Demand and in Dismissing Her Claims at Law.

Young asked for a jury trial of her claims.  The superior court granted Land Title's motion to strike the jury demand. Young's basis for the demand appears to be that because so much time has passed since the foreclosure sale, a damages remedy is preferable to an equitable remedy;  since damages are the province of law rather than equity, then Young should get a jury trial. This argument lacks merit.

Young's argument reverses the order of the inquiry;  the need for a jury trial is determined by the nature of the claims, not by the ease of remedying the situation. Young has not properly alleged any claims for compensatory or punitive damages and thus is not entitled to a jury trial under article I, section 16 of the Alaska Constitution. [80]  As we have stated, "[t]he Alaska Constitution preserves a jury trial only for those causes of action which are legal, and not equitable in nature." [81]  In *McGill v. Wahl*, we found that an action alleging that a prescriptive easement had been established was equitable whether it was styled as quiet title or ejectment. [82]  Similarly, a foreclosure suit, whether it is styled as an action to recover property or as an action for abuse of process, seeks a relief that sounds properly only in equity;  the entitlement to jury trial extends only to legal issues "independent of the foreclosure suit." [83]  However Young frames her claims, she has not alleged any claims at law such that she is entitled to a jury.

75. *Id.*

76. *Id.* at 1154.

77. *Alaska Laborers Training Fund v. P & R Enters., Inc.*, 583 P.2d 825, 827 (Alaska 1978).

78. *Cook Schuhmann & Groseclose, Inc. v. Brown & Root, Inc.*, 116 P.3d 592, 595–96 (Alaska 2005) (quoting *Rosenberg v. Smidt*, 727 P.2d 778, 783 (Alaska 1986)).

79. *See, e.g., Burnett, Waldock & Padgett Invs. v. C.B.S. Realty*, 668 P.2d 819, 823 (Alaska 1983) (prior valid foreclosure sale deprived second

deed of trust holder of power to hold second foreclosure sale, rendering second sale invalid).

80. *See also Winegardner v. Greater Anchorage Area Borough*, 534 P.2d 541, 544 (Alaska 1975) (no entitlement to jury trial if actions not "suits at common law").

81. *McGill v. Wahl*, 839 P.2d 393, 396 (Alaska 1992).

82. *Id.*

83. *Sunwest Bank of Clovis, N.A. v. Garrett*, 113 N.M. 112, 823 P.2d 912, 915–16 (1992).

Young also alleges that Embley committed the tort of abuse of process but does not make out a *prima facie* case. She alleges that Embley's purpose at the foreclosure sale was "to purchase the subject property and not to collect the secured debt." Accordingly, Embley was prepared to outbid other potential purchasers of the property. Furthermore, Embley refused to give Young a cure figure on the note. It is hard to see how these allegations could meet the requirements of the tort: "first, an ulterior purpose, and second, a willful act in the use of the process not proper in the regular conduct of the proceeding."[84] Embley purchased the property at a public auction at which Young was free to bid. Since the purpose of a foreclosure sale is to allow the deed holder to recover as much money as possible, it is hard to assign an ulterior motive to Embley for bidding at the sale. Because Young's tort claim fails as a matter of law, the superior court properly dismissed it.

## V. CONCLUSION

The right of cure enumerated in AS 34.20.070(b) extends not only to the obligor on a deed of trust but also to holders of junior interests. Young presented enough evidence of an equitable lien on the property to withstand summary judgment. Accordingly, we REVERSE the judgment of the superior court on these matters. Young's demand for jury trial and her abuse of process claim are deficient as a matter of law. Accordingly, we AFFIRM the superior court's dismissal of her tort claim and its rejection of her jury demand. We REMAND for further proceedings consistent with this opinion.

MATTHEWS, Justice, not participating.

---

**84.** *Jenkins v. Daniels*, 751 P.2d 19, 22 (Alaska 1988) (quoting W. Page Keeton, et al., Prosser and Keeton on the Law of Torts § 121, at 898 (5th ed.1984)).